ANN M. H. DE PASSE, Respondent, v JOHN F. DE PASSE, III, Appellant.

Fourth Department, November 16, 1979

APPEARANCES OF COUNSEL

*Siegel, McGee, Kelleher, Hirschorn & Munley (Mark Hirschorn* of counsel), for appellant.

*Charles J. Scibetta* for respondent.

**OPINION OF THE COURT**

MOULE, J.

The parties were married in Maryland in 1974 and have two children. The family lived in Maryland until August 22, 1978 when, amid marital difficulties, plaintiff, the children's mother, brought them to New York State. On August 24, 1978 defendant, the father, commenced an action for divorce and child custody in Maryland. Plaintiff was served in the Maryland action on September 2, 1978. On September 28, 1978 plaintiff obtained an order to show cause in Erie County Supreme Court awarding her temporary custody of the children and, on November 1, 1978, Special Term decided that New York had jurisdiction to determine the children's custody and ordered an immediate custody hearing.

The provisions of the Uniform Child Custody Jurisdiction Act, which took effect in this State on September 1, 1978 (Domestic Relations Law, art 5-A, as added by L 1977, ch 493), are determinative of whether Special Term correctly accepted jurisdiction over this custody dispute. We find that Special Term should have declined to exercise jurisdiction for two reasons: (1) New York does not meet any of the article's four jurisdictional requisites; and (2) even if New York did have jurisdiction under article 5-A, Special Term was obliged to refuse its exercise, since a proceeding concerning custody was already under way in Maryland.

Article 5-A provides that New York courts have jurisdiction over a custody dispute only when one of four requirements is met: (1) this State is the child's "home State", as defined by the article; (2) the child and at least one of the contestants have a significant connection with this State and substantial evidence about the child's upbringing is available here; (3) the child is physically present in this State and has been abandoned or is in need of emergency protection; or (4) no other State would have jurisdiction under the article's requirements (Domestic Relations Law, § 75-d, subd 1).

The record reveals that the children had never lived in New York until plaintiff unilaterally removed them to this State in August, 1978. This clearly precludes application of the article's first two jurisdictional bases. Plaintiff apparently relies on the third basis, allowing the court to exercise jurisdiction where it is necessary to protect the child in an emergency. Plaintiff alleges that defendant drinks excessively and spends much of his time away from home; that he has unreasonable

spending habits, often leaving plaintiff and the children without necessities; and that defendant has been unresponsive to plaintiff's attempts to solve these problems. These allegations, though deserving of consideration in any evidentiary hearing on the substantive custody issue, do not suggest emergency circumstances in which the welfare of the children vitally requires that the courts of this State determine custody (see *Martin v Martin,* 45 NY2d 739; *Appelblom v Appelblom,* 66 AD2d 188). One of the primary purposes of article 5-A is to deter unilateral removals of children intended to secure a more favorable custody award in another State (Domestic Relations Law, § 75-b, subd 1). To exercise jurisdiction upon the assertion that an emergency exists, with no more substantiation of what constitutes that emergency than we have here, would severely undermine this purpose.

The fourth ground upon which jurisdiction may be based is likewise inapplicable here. Maryland clearly has jurisdiction under article 5-A prerequisites. The parties were domiciled there for the duration of their marriage and the children had lived there all their lives, until plaintiff removed them in August, 1978. That State is, therefore, under two of the article's jurisdictional bases, the proper forum to litigate the custody issue. First, it is the children's "home State", since the children had resided there for at least six months before the Maryland divorce and custody proceeding was commenced, and the children were absent from that State when the proceeding was commenced because of removal by one of the persons claiming custody (Domestic Relations Law, § 75-d, subd 1, par [a], cl [ii]). Second, the children and their parents have significant connections with Maryland and that State has access to substantial evidence regarding the children's upbringing and future care (Domestic Relations Law, § 75-d, subd 1, par [b]). Since New York satisfies none of the four jurisdictional requirements, Special Term erred in taking jurisdiction to determine custody.

The exercise of jurisdiction under these circumstances was improper for an additional reason. Article 5-A requires that a court of this State must decline custody jurisdiction where a proceeding concerning custody is already under way in another State if that State has asserted jurisdiction in accordance with the provisions of the article (Domestic Relations Law, § 75-g, subd 1). Defendant informed Special Term of the pendency of the Maryland divorce action, in which custody of

the children was at issue. Under these circumstances, it was incumbent upon Special Term to communicate with the Maryland court so that the dispute would be litigated in the more appropriate forum (Domestic Relations Law, § 75-g, subd 3; *Vanneck v Vanneck,* 68 AD2d 591). If it had adhered to the procedures of article 5-A, it would have found that Maryland was indeed the more appropriate forum for litigating the children's custody. By failing to defer to Maryland in this instance, Special Term's decision to exercise jurisdiction directly contravened article 5-A's stated purpose of promoting co-operation with other States' courts so that the forum which is best qualified to render a custody decree can do so (Domestic Relations Law, § 75-b, subd 1). There is nothing in the record to indicate that Maryland courts are not competent or ready to determine the custody issue in the best interest of the children (see *Martin v Martin, supra).*

Accordingly, the order of Special Term, entered November 1, 1978, should be reversed and the proceeding dismissed.

CARDAMONE, J. P., SIMONS, HANCOCK, JR., and CALLAHAN, JJ., concur.

Order unanimously reversed, without costs and proceeding dismissed.