OPINION OF THE COURT
Chief Judge Cooke.
John and Isabelle Vanneck were married in New York in 1965 and lived together with their three children in this State until December, 1978. On the 19th of that month, during the children’s winter school recess, Isabelle Vanneck took the children to the family’s home in North Stamford, Connecticut, and decided to remain. Alleging the irretrievable breakdown of the marriage, Isabelle, defendant here, commenced an action in Connecticut on December 30, 1978 by personal service upon plaintiff in that State, seeking dissolution of the marriage, alimony and custody of the children. Two weeks later, on January 13, 1979, plaintiff commenced this New York action for divorce on the ground of cruelty or, in the alternative, for separation on the ground of abandonment. He too sought custody of the parties’ three children.
Plaintiff moved in the New York court to enjoin defendant *607 from prosecuting the divorce action in Connecticut, contending that defendant’s move was undertaken to establish divorce jurisdiction in that State to enable her to exploit its equitable distribution laws. Plaintiff also sought temporary custody of the children, urging that daily transportation to New York schools was not in the children’s best interest. In opposition, defendant asserted the bona ñdes of her residence in Connecticut, as well as that of the children, and, in support of her custody of the children, that they had been enrolled in Connecticut schools for the spring 1979 term.
In light of the custody issue present in both the New York and Connecticut actions, Special Term put aside consideration of the traditional criteria for restraining prosecution of a foreign divorce action and applied article 5-A of the Domestic Relations Law, which codifies the Uniform Child Custody Jurisdiction Act (UCCJA) (L 1978, ch 493, eff Sept. 1, 1978). Considering such factors as the family’s residence in New York of long duration, the children’s attendance at schools here, and the secondary nature of the Connecticut home prior to the separation, the court concluded that New York had a substantial interest in the family unit. The court further determined that irrespective of defendant’s contacts, residence or domicile in Connecticut, New York bore the closest connection to the children and the family and provided access to evidence concerning the children’s care, protection, training and personal relationships. The court therefore granted the injunction against prosecuting the Connecticut action pending a final determination of the New York action for divorce and other relief.
A divided Appellate Division modified the order at Special Term; it agreed that article 5-A of the Domestic Relations Law was applicable, but ruled that Special Term had given inadequate consideration to the pendency of the proceeding in Connecticut and to whether the court there was exercising jurisdiction substantially in conformity with article 5-A. The court found sufficient contacts between the family and Connecticut, at least as a threshold matter, to support jurisdiction in that State under the act. In the majority’s view, the act required the New York court to defer the exercise of jurisdiction at least until the communication and co-operation mechanisms statutorily available had been utilized by both courts to determine the most appropriate forum for the litigation. Special Term’s failure to follow the act’s mandate required rever *608 sal of the portion of the order enjoining prosecution of the Connecticut action.
The appeal is before this court on a certified question of law. There should be an affirmance and that question should be answered in the affirmative.
Traditionally, an injunction against prosecution of a foreign divorce would be granted when the rights of a resident spouse were threatened (see Garvin v Garvin, 302 NY 96). The grant of such relief involves the exercise of discretion after consideration of such factors as the bona ñdes of the domicile established in the other State, the motivation for commencing an action there and the substantiality of contacts with that forum (see, e.g., Gersten v Gersten, 61 AD2d 745; Browne v Browne, 53 AD2d 134). When the parties to a divorce proceeding seek as ancillary relief a child custody determination, however, the UCCJA is applicable (Domestic Relations Law, § 75-c, subd 3). A separate inquiry, with proper weight accorded to the provisions of the act, is required for determining whether the custody phase of the litigation may proceed in the foreign court. To assure that the best interests of the child and salutary provisions of the act are not subordinated to the parents’ interest in obtaining the best terms of the divorce, the court should determine whether to enjoin prosecution of the divorce only after the inquiry concerning the custody issues has been undertaken. Of course, the decision whether to exercise custody jurisdiction is a factor in determining the propriety of injunctive relief against the divorce phase, and the weight to be accorded this factor may vary depending on the circumstances of the particular case. The preliminary decision concerning New York’s exercise of jurisdiction over the custody issues, however, must have as its foundation the proper application of the UCCJA.
The UCCJA represents a considered effort to give stability to child custody decrees, minimize jurisdictional competition between sister States, promote co-operation and communication between the courts of different States, all to the end of resolving custody disputes in the best interests of the child (see Domestic Relations Law, § 75-b; Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master Ed], pp 111-114; see, generally, Governor’s Memorandum approving L 1977, ch 493; 1977 McKinney’s Session Laws of New York, pp 2514-2515; 96 ALR3d 968). The act offers a standard for determining in the first instance whether the necessary predi *609 cate for jurisdiction exists. Custody may be determined in the child’s "home state” (Domestic Relations Law, § 75-d, subd 1, par [a]), defined as "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months” (Domestic Relations Law, § 75-c, subd 5), or in the State that had been the child’s home State within six months before commencement of the proceeding where the child is absent from the State through removal by a person claiming custody and a parent lives in the State (Domestic Relations Law, § 75-d, subd 1, par [a], cl [ii]). A jurisdictional predicate also exists in New York when "it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships” (Domestic Relations Law, § 75-d, subd 1, par [b]).[1]
The inquiry is not completed merely by a determination that a jurisdictional predicate exists in the forum State, for then the court must determine whether to exercise its jurisdiction. There, too, the act guides the determination, commanding the court to consider whether it is an inconvenient forum (Domestic Relations Law, § 75-h) or whether the conduct of the parties militates against an exercise of jurisdiction (Domestic Relations Law, § 75-i; see, also, Matter of Settle, 276 Ore 759). Notwithstanding that this State has jurisdiction, a court "shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this article” (Domestic Relations Law, § 75-g, subd 1; see, e.g., Paltrow v Paltrow, 37 Md App 191). Once a court of this State learns of the pendency of another proceeding, the court "shall *610 stay [its own] proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections seventy-five-s through seventy-five-v of this article” (Domestic Relations Law, § 75-g, subd 3).
The express statutory command of section 75-g was all but ignored by Special Term. Given the pendency of the Connecticut action, the question with which the court should have been concerned was not whether New York had jurisdiction to determine the custody dispute, nor whether New York was the most appropriate forum. Rather, at that stage of the proceeding, the focus of inquiry should have been whether Connecticut was "exercising jurisdiction substantially in conformity” with article 5-A.
The instant case calls into play the jurisdictional predicate of section 75-d (subd 1, par [b]), which provides that a State may exercise jurisdiction when it serves the best interests of the child because there is a significant connection to the forum and there is available substantial evidence concerning the child’s present or future welfare. Particularly relevant to the' jurisdictional determination is whether the forum in which the litigation is to proceed has "optimum access to relevant evidence” (Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master Ed], § 3, p 124). Maximum rather than minimum contacts with the State are required (id.). The general language of this subdivision permits a flexible approach to various fact patterns. This imprecision, however, must not destroy the legislative design "to limit jurisdiction rather than to proliferate it” (id.).
We need not decide whether the pendency of a proceeding in a forum totally lacking a jurisdictional predicate would mandate that a New York court suspend its action for purposes of communicating with the other court (compare Domestic Relations Law, § 75-g, subd 1, with § 75-g, subd 3; cf. Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master Ed], § 6, p 135 [even absent a jurisdictional basis in the other forum, "the policy against simultaneous custody proceedings is so strong that it might * * * be appropriate to leave the case to the other court”]; but see Sharp v Aarons, 101 Misc 2d 323). But, at least where the claim of sister State jurisdiction is colorable, a New York court must heed the statutory command to defer adjudicating the dispute and *611 communicate with the foreign court. Such a claim exists here, as defendant has alleged that she and the children have significant ties to Connecticut developed prior to the commencement of the proceeding there.
Thus, defendant’s assertions here, at least as a threshold matter, support an exercise of jurisdiction by the Connecticut court (cf. Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master Ed], § 3, p 124 [suggesting that a parent’s return to a State of former residence in which the children each year spent several months might provide the requisite connection to the State]), and required Special Term to open channels of communication with the Connecticut court before enjoining prosecution of the action there.[2] The New York court’s unilateral decision to exercise jurisdiction and prevent Connecticut’s exercise of jurisdiction is contrary to the avowed purposes of the legislation adopted by both States. Rather than promote co-operation between courts, it fosters the very jurisdictional competition sought to be avoided.
 The Appellate Division therefore properly determined that the injunction against prosecuting the action in Connecticut was inappropriate. The Appellate Division, in the exercise of discretion, could have enjoined only the divorce phase of the litigation, for, as noted above, that question is separate from the question whether jurisdiction exists to entertain a custody dispute. Indeed, plaintiff argues that such relief is proper here, pointing to defendant’s recent search for a New York residence and continuing contacts with this State and asserting that defendant’s decision to remain in Connecticut and her commencement of the action there represents forum shopping for a more favorable disposition. While such discretionary relief might be appropriate to protect the rights of a resident spouse in some circumstances, there was no abuse of discretion in the Appellate Division’s failure to bifurcate the proceeding given defendant’s assertion of a bona fide domicile in Connecticut, the family’s previous contacts with that State, and the pendency of the custody issues there. Finally, we have *612 examined plaintiffs remaining contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed, with costs. Question certified answered in the affirmative.

. Section 75-d further provides for jurisdiction when:
“(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or
"(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction” (Domestic Relations Law, § 75-d, subd 1, pars [c], [d]).

. We are not unmindful of the possibility that a court in another State might exercise jurisdiction and decide the issues during a stay effected by a New York court for purposes of communicating with the other court (see, e.g., Irene R. v Inez H., 96 Misc 2d 947). But we cannot adopt a defensive posture and, acting on an assumption that a sister court will ignore its obligation under the UCCJA, effectively nullify the laudable goals of that legislation.