■ F. Richard Decatur, Jr., as Guardian ad Litem of Katherine Q. Dwyer, an Infant, et al., Appellants, v Frances Ahearn et al., Respondents. (Action No. 1.) In the Matter of Mary S. Burch, Respondent, v Edward Ahearn et al., Respondents, and Mary J. England, as Commissioner of Social Services of the Commonwealth of Massachusetts, Appellant. (Action No. 2.) — Appeal, in Action No. 1, from an order of the Supreme Court at Special Term (Pitt, J.), entered September 2, 1981 in Rensselaer County, which, *inter alia*, dismissed plaintiffs' complaint. Appeal, in Action No. 2, by permission, from an order of the Family Court of Rensselaer County (Reeves, J.), entered February 9, 1982, which ruled that the court has jurisdiction to hear and determine the issue of custody of the infant Katherine Quinn Dwyer. Katherine Quinn Dwyer is a six year old born out of wedlock in Massachusetts to Mary Catherine Dwyer, who became an alcoholic and was periodically unable to care for the child. On November 3, 1978, Mary signed a form agreement of temporary care for Katherine with the Massachusetts Department of Public Welfare, which then placed the child with Edward and Frances Ahearn for foster care. When the mother attempted to rescind the agreement and terminate foster care, the department, on July 17, 1979, petitioned for and obtained an order from the Probate Court awarding the department temporary custody, the child remaining with the Ahearns. In a petition to the Probate Court filed March 13, 1980,

Mary Burch, the child's maternal grandmother, sought appointment as guardian with custody. On March 25, 1980, the department, because of the mother's deteriorating condition, petitioned for an order pursuant to chapter 210 of the Massachusetts General Laws dispensing with the need for parental consent to any petition by the department for adoption.[*] Home studies of both the Ahearns and Mary Burch were obtained. The pending petitions by Burch and the department were both conferenced by the court on November 20, 1980, at which time Burch, her attorney, Mary, the child and the department's attorney were all present. Burch was given a visitation order to take the child to Troy, New York, for the 1980 Christmas holiday. On January 7, 1981, the mother perished in a fire. On April 14, 1981, Burch again obtained an order for visitation with the child in Troy for one week, and on April 22, 1981, she filed a petition in the Rensselaer County Family Court pursuant to subdivision (b) of section 651 of the Family Court Act seeking custody of the child (Action No. 2). By order made the same date, the Family Court ordered the Ahearns and the Massachusetts Commissioner of Social Services (formerly Public Welfare) to show cause on May 18, 1981 why custody should not be awarded to Burch, and further ordered that temporary custody be awarded to her. On May 22, 1981, Justice Mary Fitzpatrick of the Massachusetts Probate Court, upon learning the child had not been returned to that State, granted the department's pending chapter 210 petition dispensing with parental consent for Katherine's adoption, and in another order awarded temporary custody to the department. The Justice wrote to the Rensselaer County Family Court fully apprising it of the pending matter in her court and stating that Massachusetts was the appropriate jurisdiction. On May 26, 1981, the Probate Court granted an order of adoption to the Ahearns. Thereafter, on July 1, 1981, the infant Katherine, by her guardian ad litem Decatur, and Burch, commenced Action No. 1 in Supreme Court, Rensselaer County, seeking money damages due to deprivation of their civil and constitutional rights, an injunction restraining defendants from any further action to obtain custody, a declaration that the adoption is void and that custody be awarded to Burch, and money damages for negligent representation by the Massachusetts attorney representing the child. By order to show cause, plaintiffs then sought to remove the pending Rensselaer County Family Court proceeding commenced by Burch to Supreme Court, and defendants cross-moved to dismiss the action. Special Term denied removal, finding the Family Court best qualified to determine the custody issues, and granted the cross motions to dismiss the complaint. Plaintiffs have appealed. In Action No. 2, the Rensselaer County Family Court, after hearings, held that the court had jurisdiction pursuant to section 75-d of the Domestic Relations Law and ordered a trial on the merits of the petition. Respondents have appealed from that determination. In Action No. 1, we hold that Special Term properly dismissed the complaint, albeit we affirm that result upon a different ground. We conclude that the facts so clearly invoke the application of the provisions of CPLR 327 that consideration of whether the complaint states a cause of action should not be indulged. In essence, the only connection the present litigation has with New York is that plaintiff Burch is a domiciliary. All the other parties against whom a cause of action has been stated are domiciliaries of Massachusetts. The substance of the action is

---

[*] It should be noted that although Massachusetts officials at all times stated that the child's father was unknown, the record shows that one Kirk Griffin, a Boston attorney, had acknowledged paternity, had made support payments to the department, and had made frequent telephone calls to both the department and the child's mother. On December 10, 1981, Griffin executed a written agreement with Burch appointing her guardian, designating Rensselaer County as the child's residence, and consenting to adoption of the child by Burch.

whether the notice which was issued from the Massachusetts Probate Court was sufficient in the Massachusetts adoption proceeding. On balancing the interests and conveniences of the respective parties and of the courts, we conclude that the action could be better adjudicated in a Massachusetts forum. This is not a case where plaintiffs are precluded from effective redress of their grievances in a more appropriate forum (see *Varkonyi v S.A. Empresa De Viacao Airea Rio Grandense* [*Varig*], 22 NY2d 333, 338). We find no "special and unusual circumstances" warranting continued acceptance of this action in New York (*Taylor v Interstate Motor Frgt. System,* 309 NY 633, 636). Nor does Burch's residence in New York preclude us from staying or dismissing the action (CPLR 327; *Silver v Great Amer. Ins. Co.,* 29 NY2d 356). In sum, we conclude that New York is an inconvenient forum and that litigation in Massachusetts would best serve the ends of justice and the convenience of the parties. The complaint should, therefore, be dismissed, without prejudice. In Action No. 2, we hold that the Rensselaer County Family Court erred, requiring reversal of the order and dismissal of the petition. That court relied upon section 75-d (subd 1, par [b]) of article 5-A of the Domestic Relations Law (Uniform Child Custody Jurisdiction Act) by holding "it is in the best interest of the child that the court assume jurisdiction because the child and Burch have a significant connection with New York State", and "there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training and personal relationships". It was, however, mandatory for the Family Court to comply with the express statutory command of section 75-g of the Domestic Relations Law, given the pendency of the Massachusetts proceedings which were fully set forth in the Burch petition. At the very inception of the Rensselaer County proceedings, the question with which the court should have been concerned was not whether New York had jurisdiction to determine the dispute, nor whether New York was the more appropriate forum. "Rather, at that stage of the proceeding, the focus of inquiry should have been whether [Massachusetts] was 'exercising jurisdiction substantially in conformity' with article 5-A" (*Vanneck v Vanneck,* 49 NY2d 602, 610). The record shows that the Rensselaer County Family Court failed to communicate with the Massachusetts Probate Court, at which moment subdivision 3 of section 75-g of the Domestic Relations Law came into play and required that the Burch petition be stayed and that the court communicate with Massachusetts for, at a very minimum, the exchange of information. The unilateral decision to assume jurisdiction is contrary to the avowed purposes of the act by which New York is bound even though Massachusetts has not adopted the act. "[A] New York court must heed the statutory command to defer adjudicating the dispute and communicate with the foreign court" (*Vanneck v Vanneck, supra,* pp 610-611). Further analysis shows that the Family Court found the jurisdictional prerequisite for a custody determination by a satisfaction of section 75-d (subd 1, par [b]) of the law. That section provides, in part, that jurisdiction may be found *only* when it is in the best interests of the child because (i) the child and at least one contestant have a significant connection with this State, and (ii) there is within the jurisdiction substantial evidence concerning the child's care, protection and future relationships. The Court of Appeals, in interpreting this same paragraph in *Vanneck* held that "[m]aximum rather than minimum contacts with the State are required" (*Vanneck v Vanneck, supra,* p 610), and that although the subdivision permits a flexible approach to various fact patterns, the imprecision must not destroy the legislative design to limit jurisdiction, not proliferate it (*id.*). The record reflects that except for the grandmother Burch and other blood relatives in New York, every contact the child had was with Massachusetts. It was the State of her birth and her only residence until these proceed-

ings were commenced in April, 1981. In 1978, custody had been granted to the Department of Public Welfare in Massachusetts where she lived with foster parents. She was in school and day care centers, and received therapy and medical care there. Clearly, from the evidence, that was her " 'Home state' " (see Domestic Relations Law, § 75-c, subd 5). We reject the grandmother's contention that an emergency existed in which the welfare of the child vitally required that the courts of this State determine custody (see *Martin v Martin,* 45 NY2d 739; *De Passe v De Passe,* 70 AD2d 473). While Burch offered a psychiatrist's report to substantiate her contention, the record shows that the child not only received mental therapy in Massachusetts, but that multiple investigatory reports from that State show she was well adjusted and happy in her foster home and did well in school. Moreover, multiple court proceedings, including at least three petitions by Burch herself, were brought in Massachusetts. If indeed "[m]aximum rather than minimum contacts with [a] State" are significant criteria to guide courts in determining a jurisdictional issue (*Vanneck v Vanneck, supra; Matter of Sullivan v Sullivan,* 87 AD2d 42; *Steinman v Steinman,* 80 AD2d 892, app dsmd 54 NY2d 641), the Family Court erred in concluding that it had jurisdiction. While we cannot help but sympathize with Mrs. Burch, who obviously exhibits love and concern for Katherine, we are constrained to follow the law as we find it to be. Chief Judge Cooke, in a footnote in *Vanneck v Vanneck (supra,* p 611), wrote: "We are not unmindful of the possibility that a court in another State might exercise jurisdiction and decide the issues during a stay effected by a New York court for purposes of communicating with the other court (see e.g., *Irene R. v Inez H.,* 96 Misc 2d 947). But we cannot adopt a defensive posture and, acting on an assumption that a sister court will ignore its obligation under the UCCJA, effectively nullify the laudable goals of that legislation." The order of the Family Court must be reversed and the petition dismissed. Order, in Action No. 1, modified, on the law and the facts, to reflect dismissal of the complaint, without prejudice, on the ground of *forum non conveniens,* and, as so modified, affirmed, without costs. Order, in Action No. 2, reversed, on the law, without costs, and petition dismissed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.