OPINION OF THE COURT
Anthony J. Ferraro, J.
In this proceeding between husband and wife to determine the custody of the three infant issue of their marriage, the court must first address the threshold issue of jurisdiction. The court’s decision will be controlled by the *427 provisions of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A).
Petitioner and respondent were married on March 19, 1967, in Teheran, Iran. There are three children of the marriage, ages 14, 10 and 8. For approximately 10 to 11 years of their marriage, the parties have lived outside the United States, and, for the last seven years, have lived with their children in Dubai, United Arab Emirates. Respondent, a citizen of the United States, who was born and raised in Georgia and still has family there, resided in Dubai with his wife and children and worked as an engineer under the sponsorship of petitioner’s father. Petitioner is a permanent resident alien of the United States, and Lebanese by birth. Respondent alleges that, during their marriage, he and his wife lived in Georgia for five years. Petitioner does not deny this. She admits to having lived in Georgia for some period of time with respondent and their children, but emphasizes that this was approximately seven years ago, the family having left Georgia when the children were six months, two and one-half and eight years of age.
During the last few years, the parties have experienced increased marital difficulties. They have been unable to resolve their differences legally in Dubai, since as nonMoslems, they are not permitted access to the courts of that country. It appears that respondent has for some time wanted to return to the United States and his native Georgia with his wife and two youngest children, while allowing his oldest child to remain in a boarding school in England. It seems, however, that petitioner would not consent to such a plan.
In October, 1982 petitioner was visiting the parties’ oldest child in England, and briefly visiting friends in New York while renewing her resident alien status. During her absence, respondent admittedly took his two youngest children in the middle of the night, left Dubai, and flew to Georgia. Petitioner, then in New York, was notified of respondent’s actions and, on or about October 27,1982, met respondent’s flight in Atlanta, Georgia. She was accompanied by a policeman and a local attorney. Respondent turned the children over to her, although he alleges that *428 this was done with the understanding that they would then go to an Atlanta hotel to discuss and settle their differences. This understanding, he claims, was breached by petitioner, who immediately returned to New York with the children.
Petitioner is now in Westchester County, New York, with her two youngest children. Her oldest child remains in England. Respondent is in Georgia.
The instant proceeding was commenced by personal service of the order to show cause and petition on respondent in Georgia. Service was effected on November 3, 1982, at 2:15 p.m. At 3:30 p.m. on the same day, respondent filed a petition in the Superior Court of Henry County, Georgia, for sole custody of his two youngest children. Upon the filing of said petition, and having found that it had jurisdiction under the Uniform Child Custody Jurisdiction Act (Ga Code Ann, ch 74-5), the Henry County Superior Court (Crumbley, J.) issued a temporary order granting respondent herein sole custody of his two youngest children. It then set the matter down for a plenary hearing on December 20,1982. It should be noted that in his custody petition in Georgia respondent herein did not inform the Georgia court that a proceeding was pending in New York. Nevertheless, it is apparent that the Georgia court is aware of the instant proceeding in that it has forwarded to this court all papers relative to the Georgia proceeding, and has referenced its communications with the title and index number of the instant matter.
The question now presented is whether a New York court has jurisdiction under the jurisdictional prerequisites of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, § 75-d) to entertain this petition for custody. The court answers in the negative.
Section 75-d of the Domestic Relations Law reads as follows:
“1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
“(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had *429 been the child’s home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
“(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
“(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or
“(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
“2. Except under paragraphs (c) and (d) of subdivision one of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make child custody determination.
“3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.”
Clearly, none of petitioner’s three children come within the purview of paragraph (a) of subdivision 1 of section 75-d. New York is not and never has been their home State as defined by subdivision 5 of section 75-c of the Domestic Relations Law.
As to paragraph (b) of the same subdivision, the jurisdictional determination shall be “whether the forum in which the litigation is to proceed has ‘optimum access to relevant evidence’ (Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master ed], § 3, p 124). Maximum, rather than minimum contacts with the State are required *430 (id.). The general language of this subdivision permits a flexible approach to various fact patterns. This imprecision, however, must not destroy the legislative design ‘to limit jurisdiction rather than to proliferate it’ (id.)” (Vanneck v Vanneck, 49 NY2d 602, 610.)
In the case at bar, there has been no showing that any of the three subject children have had any significant connection with this State or that there is within the jurisdiction of the court substantial evidence concerning their present or future care, protection, training, and personal relationships. This is especially true for the child now in England, who has not been proven ever to have been in New York. Regarding the children now within the State, it is admitted that they have only been here for a matter of weeks; that they are in New York by force of circumstances; that their home is in Dubai, and that they virtually have no connections with New York, let alone significant ones that could produce substantial evidence as to their present or future care. (See Vanneck v Vanneck, 49 NY2d 602, supra; De Passe v De Passe, 70 AD2d 473; see, also, Matter of Sullivan v Sullivan, 87 AD2d 42, 45.)
Paragraph (c) of subdivision 1 of section 75-d authorizes jurisdiction in emergency situations. Its first prerequisite is that the subject child be physically present in the State. With regard to petitioner’s oldest child, now in England, this -paragraph does not give New York jurisdiction to adjudicate her custody. The other two children, however, are physically present in this State. Therefore, if an emergency exists necessitating intervention by the courts of this State to protect the children, then this court would have jurisdiction to entertain the instant petition. (An alternative jurisdictional prerequisite under this paragraph is that the subject child has been abandoned, which is not relevant to the facts of this case.)
Petitioner contends that New York would have jurisdiction under section 75-d (subd 1, par [c]) of the Domestic Relations Law, because respondent has created an emergency by tearing the children from their home, friends, family and school. These allegations, though deserving of consideration in any evidentiary hearing on the substantive custody issue, do not suggest emergency circum *431 stances in which the welfare of the children vitally requires that the courts of this State determine custody. (De Passe v De Passe, 70 AD2d 473, 475, supra; see Martin v Martin, 45 NY2d 739; Appelblom v Appelblom, 66 AD2d 188.) The “emergency” basis for acquiring jurisdiction requires that the petitioner demonstrate that the subject child will somehow suffer emotionally or physically if jurisdiction is not exercised. (Gomez v Gomez, 86 AD2d 594, 596; De Passe v De Passe, supra; Schaeffer v Schaeffer, 101 Misc 2d 118; Matter of Lemond,_Ind_, 413 NE2d 228; State of Indiana ex rel. Marcrum v Marion County Superior Ct., _ Ind_, 403 NE2d 806; Brock v District Ct. of County of Boulder, 620 P2d 11 [Col]; Roberts v District Ct. of Larimer County, 198 Col 79; Ferreira v Ferreira, 9 Cal 3d 824.) Such a showing has not been made here.
There remains paragraph (d) of subdivision 1 of section 75-d. Petitioner does not argue that this paragraph authorizes jurisdiction in New York. And yet, it would appear to the court that this is the only provision of section 75-d wherein authority might be found for exercising jurisdiction. Once again, it reads:
“A court of this state which is competent to decide child custody matters has jurisdiction * * * when * * *
“(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.”
Under clause (i), there are alternative bases for jurisdiction, viz., that no other State has jurisdiction or that another State has declined jurisdiction in favor of New York. The second alternative is inapplicable, in that the State of Georgia, the only other State whose jurisdiction has been invoked, has not deferred to New York.[1]
*432 The question at this point, therefore, is whether Georgia, the only competing jurisdiction, has jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c) of subdivision 1 of section 75-d of the Domestic Relations Law to adjudicate the custody of the subject children. If not, this court could assume jurisdiction.
It would appear that Georgia does not have jurisdiction under section 75-d (subd 1, par [a] or [c]) of the Domestic Relations Law. Although the children lived in Georgia at one time for a period of six consecutive months or more, and thus, at one time made it their home State (Domestic Relations Law, § 75-c, subd 5), it was not their home State at the commencement of the Georgia proceeding, nor had it been within six months prior thereto (Domestic Relations Law, § 75-d, subd 1, par [a]). Moreover, there is no emergency jurisdiction in Georgia, since none of the children are present in that State, and there is the same absence of facts creating an emergency in Georgia as in New York (Domestic Relations Law, § 75-d, subd 1, par [c]).
Would it, however, be in the children’s best interests that Georgia assume jurisdiction because they and their parents, or, at least, they and their father have a significant connection with that State, and there is in Georgia substantial evidence concerning, inter alia, the children’s present and future care (Domestic Relations Law, § 75-d, subd 1, par [b])? On this record, it is obvious that, at least, respondent herein has a significant connection with Georgia. (See Matter of Sullivan v Sullivan, 87 AD2d 42, 44, supra.) Nevertheless, do the children have such contacts with Georgia and is there substantial evidence in that State concerning their present and future care? Standing alone, Georgia probably does not have the maximum, rather than minimum, contacts that are required by paragraph (b). (See Vanneck v Vanneck, 49 NY2d 602, 610, supra.) And yet, in comparison with New York, the children’s contacts with Georgia are far more significant, and the availability of substantial evidence concerning their present and future care far more likely. Georgia was admittedly their home State at one time; it was their parents’ marital domicile for five years; it is their father’s native *433 State, and is currently the residence of many of the children’s paternal relatives. New York, on the other hand, has as its only connection with the children their, and their mother’s, presence in this State for the last few weeks, which is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination (Domestic Relations Law, § 75-d, subd 2).
In determining this court’s jurisdiction in the case at bar, therefore, it is not only necessary to analyze the jurisdictional claims of New York and Georgia separately, but because of the independently limited nature of each State’s contacts with the subject children, it is necessary to analyze them comparatively. For where as here, there are only two available forums, and each is less than optimally appropriate for determining custody, the jurisdictional issue must be decided based on a balancing test which weighs the appropriateness of each forum in comparison with the other. Such a decision-making process would be in keeping with the purpose of the Uniform Child Custody Jurisdiction Act “to give stability to child custody decrees, minimize jurisdictional competition between sister States [and] promote co-operation and communication between the courts of different States”. (Vanneck v Vanneck, 49 NY2d 602, 608, supra.) Moreover, it would be consistent with the intent of section 75-d (subd 1, par [b]) of the Domestic Relations Law to limit jurisdiction rather than to proliferate it. (Prefatory Note of Commissioners on Uniform State Laws, 9 ULA [Master ed], § 3, p 124.)
Wherefore, the court finds that Georgia would, and, in comparison with New York, should exercise jurisdiction to determine the custody of the subject children as a State with a more colorable claim to jurisdiction under section 75-d (subd 1, par [b]) of the Domestic Relations Law. Thus, it is concluded that since Georgia can, and will, exercise such jurisdiction, this court cannot do so under section 75-d (subd 1, par [d]) of the Domestic Relations Law.[2]
*434 Accordingly, the instant application is denied and the petition is dismissed, and all orders previously issued by this court in the instant proceeding are vacated.
Furthermore, pursuant to section 75-p of the Domestic Relations Law, and after consultation with the Georgia court, it is ordered that the temporary order of custody of the Henry County Superior Court (Crumbley, J.), dated November 3, 1982, be continued until the Georgia hearing on December 20, 1982, or further order of that court. Nevertheless, for the best interests of the children and in order to avoid as much disruption in their lives as possible under the circumstances, petitioner herein is permitted to retain, and respondent shall not disturb, the physical custody of the two youngest children until December 20,1982. On said date, petitioner herein, by order of this court and at the request of the Georgia court (Domestic Relations Law, §§ 75-s, 75-t), shall appear with said children in the Henry County Superior Court for the hearing in the case of David Donald Mitchell v Viviane Khayatt Mitchell (Henry County Superior Ct, Civil Action No. 14976). The travel and other necessary expenses of petitioner herein and her two youngest children in order to appear at the December 20, 1982 hearing in Georgia shall, upon a proper showing at said hearing, be assessed against respondent herein by the Henry County Superior Court.

. Pursuant to section 75-g of the Domestic Relations Law, this court has communicated with the Henry County Superior Court of Georgia, and has confirmed that the Georgia court is prepared to proceed in the custody matter before it, and to exercise *432 continuing jurisdiction over the parties and subject children (cf. Vanneck v Vanneck, 49 NY2d 602, 610-611, supra).

. The court notes that the proceeding in Georgia only seeks a determination of the custody of the two youngest children of the parties, whereas the New York proceeding concerns all three children. Since it has been decided that Georgia is the more appropriate forum for determining the custody of the parties’ children, petitioner herein may, if *434 she be so advised, cross-petition in the Georgia court for the custody of all three children, so as to place in issue in Georgia the same question of custody as to all her children as she attempted to litigate here.