■ BARRY MAYOFF, Appellant, v AMY M. ROBIN, Respondent.—In a proceeding pursuant to Domestic Relations Law § 240, the petitioner husband appeals from a judgment of the Supreme Court, Queens County (Berkowitz, J.), dated May 16, 1985, which, after a hearing, *inter alia,* denied his motion for an injunction prohibiting the respondent mother and the parties' son from leaving New York State except for the purposes of preparation of court proceedings in the State of Florida, denied his motion for temporary custody of the parties' son, and awarded custody to the respondent mother.

Judgment reversed, on the law, without costs or disbursements, and proceeding dismissed. In order to permit either party to seek appropriate relief in the Florida custody proceeding, the provisions contained in the order of this court dated May 16, 1985 are continued for a period of 60 days from the date of the order to be made hereon, except that the respondent may remove the child Jason from the State of New York during this time period solely for the purpose of facilitating the resolution of the instant custody dispute in the State of Florida.

The parties to this action were married in Montreal, Canada, in January 1979. They had a child, Jason, later that year. Shortly thereafter, a marital dispute occurred, and the respondent mother left Canada with Jason, without petitioner's knowledge or consent, and came to live with her parents in Queens County, where she remained for approximately nine

months. In 1980, unbeknownst to petitioner, the respondent relocated with Jason to Florida, where they resided until March 1985. In 1982, the parties were divorced pursuant to a Canadian divorce decree. The respondent was awarded custody of Jason, and petitioner was granted visitation on the last weekend of each month.

From 1980 until June 1984, the petitioner was unable, despite diligent efforts, to locate the respondent and Jason. When he eventually found them living in Bradenton, Florida, the respondent exacted a substantial sum of money from petitioner before allowing him to see his son. The petitioner again visited with Jason for a week in the fall of 1984; however, at the conclusion of this visit, the respondent and petitioner had an argument which resulted in the respondent's refusal to allow the petitioner to see the child anymore.

In March 1985, the petitioner commenced a proceeding in Manatee County, Florida, seeking to obtain visitation with Jason. In that proceeding, the petitioner obtained a temporary injunction enjoining respondent from removing the minor child from the jurisdiction of the court during the pendency of that proceeding. In spite of this, the respondent left Florida and came to New York, where she planned to stay for only a few weeks before departing for Norway, where she planned to reside permanently with Jason and her future husband.

When the petitioner became aware of her intentions, he moved by order to show cause for temporary custody of Jason, or, in the alternative, an order enjoining respondent and Jason from leaving New York State except for the purpose of the preparation of court proceedings in Florida, where petitioner had instituted a proceeding seeking visitation with Jason. Following a hearing, Special Term found that New York could properly assert jurisdiction over the dispute due to the respondent's and Jason's presence in New York, whereupon the court granted custody to the respondent and, in effect, gave her permission to take Jason to Norway.

By order of this court dated May 16, 1985, this court stayed the judgment appealed from to the extent that respondent was ordered to refrain from taking any action in furtherance of obtaining a passport for Jason, and in the event that one was obtained, she was directed to deposit it with the Clerk of this court. She was also enjoined from removing Jason from the State of New York absent this court's prior approval.

On appeal, the petitioner argues that New York lacked jurisdiction under the Uniform Child Custody Jurisdiction Act

(UCCJA) to render a permanent custody decree. We agree. The UCCJA, codified in Domestic Relations Law article 5-A, establishes the predicates for both subject matter and in personam jurisdiction in custody disputes (Domestic Relations Law § 75-d; *Gomez v Gomez,* 86 AD2d 594, 595, *affd* 56 NY2d 746). Domestic Relations Law § 75-d provides four bases for the exercise of jurisdiction *(Vanneck v Vanneck,* 49 NY2d 602, 608-609). The only one relevant herein permits a court of this State to assume jurisdiction if "it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships" (Domestic Relations Law § 75-d [1] [b]). "Jurisdictional facts must be demonstrated to the court's satisfaction 'in the first instance' *(Vanneck v Vanneck, supra,* pp 608-609) and whatever may occur after the jurisdictional question is determined is irrelevant to that issue" *(Gomez v Gomez, supra,* at p 595).

In April 1985, when this proceeding was instituted, the child did not have a significant connection with this State, as his only connection was his mere passing presence in the State, pending the receipt of his passport, whereupon he was to be brought to Norway to reside on a permanent basis. Under the UCCJA, physical presence alone is an insufficient basis upon which to assume jurisdiction (Domestic Relations Law § 75-d [2]; *Gomez v Gomez, supra; Matter of Sullivan v Sullivan,* 87 AD2d 42, 44, *affd* 58 NY2d 642).

Furthermore, in determining whether there exists within the court's jurisdiction "substantial evidence" of "the child's present or future care, protection, training, and personal relationships" (Domestic Relations Law § 75-d [1] [b] [ii]), a particularly relevant factor "is whether the forum in which the litigation is to proceed has 'optimum access to relevant evidence' " *(Vanneck v Vanneck, supra,* at p 610). Thus, maximum contacts with the State are required *(Vanneck v Vanneck, supra,* at p 610). Just prior to the institution of this proceeding, Jason had lived in Florida for approximately five years. Not only is Florida his home State under the UCCJA (Domestic Relations Law § 75-d [1] [c]; § 75-c [5]), but there is an abundance of evidence there indicative of the type of care provided by the respondent throughout most of the child's life. Moreover, in light of the fact that respondent intended to relocate to Norway in the event that she was awarded cus-

tody, and petitioner intended to take Jason to Canada if he was awarded custody, there was no significant connection with New York as contemplated in Domestic Relations Law § 75-d (1) (b).

Additionally, we note that even had jurisdiction existed under the UCCJA, we would nonetheless reverse due to the court's failure to defer the instant proceeding and communicate with the Florida court in order to determine the more appropriate forum in which to litigate this dispute under the UCCJA, as is required by Domestic Relations Law § 75-g (3) *(see, Quill v Quill,* 99 AD2d 543). Thompson, J. P., Brown, Weinstein and Kunzeman, JJ., concur.