In the Matter of MICHAEL P., Respondent, v DIANA G., Appellant.

First Department, April 10, 1990

APPEARANCES OF COUNSEL

*David A. Slavin* for respondent

*Diana G.,* appellant *pro se.*

OPINION OF THE COURT

MILONAS, J.

Respondent mother appeals from an order of the Supreme Court which, in relevant part, denied her motion to dismiss the instant proceeding and prohibited her from removing the subject child, Deborah, from New York pending a final custody determination. The child, who was born on December 12, 1981, is the biological child of the parties to this action. Petitioner father and respondent were never married to each other. They met in Pittsburgh, Pennsylvania, in January of 1981 at a time when both were suffering from drug and alcohol problems. Following the birth of the child, petitioner entered a treatment program and has apparently continued to refrain from substance abuse. While respondent's current status relating to substance abuse is less certain, there is no clear indication of a present addiction. However, according to the hearing court, despite having admitted to prior substance abuse, respondent was "evasive about the duration and nature" of this matter.

In December of 1983, petitioner instituted a custody proceeding in Pennsylvania, and, shortly thereafter, respondent, without notifying petitioner, moved to Madison, Wisconsin, where she resided with three other children until the commencement of the present custody dispute. In all, respondent has had five children by four different men, one of whom she married. Although petitioner subsequently discovered respondent's new address, he did not again seek legal custody prior to initiating the proceeding before us now. Respondent has denied that she relocated from Pennsylvania to Madison, Wisconsin, in order to evade petitioner's custody action, but she conceded at the hearing that she was aware that such a proceeding had been brought. It should also be noted that evidently when Deborah was an infant, petitioner removed her to New York, his native State, without respondent's permission, and the latter was compelled to travel to New York to retrieve her daughter. Moreover, since January 13, 1987, when Deborah began living with her father during what was originally intended to be a temporary stay, petitioner has not only declined to return the child to her mother but seems

to have restricted respondent's access to Deborah. Respondent, on the other hand, in addition to moving to Wisconsin without informing petitioner, has changed her address in Madison on a number of occasions, complicating petitioner's attempts to visit Deborah. There is, thus, disturbing evidence that each parent has, at times, endeavored to withhold the child from the other.

In Madison, respondent was employed as a secretary for about a year and also received public assistance. Although she claims that she still performs temporary secretarial work, it is admitted that, at some point, she started to work at a "geisha" house as a masseuse where her job description included prostitution. Petitioner visited his daughter in Wisconsin and contributed some money to her support. It is his contention that Deborah's living conditions there were abominable. Among the negative factors cited by petitioner is that the girl was frequently left without adult supervision while respondent "plied her nightly trade" (Deborah's older siblings were at home with her); that she had no regular bedtime nor her own room nor even a particular bed for her own use; and that respondent's household was chaotic and unstable in that she tended to reside in depressed areas of Madison, and the interior of her home was dirty and messy.

In addition, petitioner asserts that respondent's relationship with her daughter is characterized by a complete lack of discipline, yet respondent believes that, instead of having limits placed upon them, children should be allowed to develop at their own pace. Accordingly, she permits her children to eat their meals whenever they wish, to sleep whenever and in whichever bed they choose and generally to do what they want. In contrast to respondent, whose life-style is certainly, at the very least, unconventional, petitioner has established a stable life for himself. He is a resident of Manhattan and had, at the time of the hearing, been employed for approximately five years as a stock trader. His parents also live in Manhattan and are available to visit with and assist in caring for Deborah on a regular basis. Deborah apparently has a warm and loving relationship with her grandparents. Indeed, there is no doubt that the child is loved by all her relatives. Petitioner and respondent are both warm and loving parents notwithstanding the difference in their life-styles; petitioner's family love Deborah, as do her siblings (her mother's other children). However, petitioner contends that the child's best interest would be served by remaining with him in Manhattan

where she could be provided with a stable and structured existence, including her own room, educational opportunities, intellectual stimulation and guidance.

In January of 1987, respondent found herself under so much stress that she sent 3 of her 4 children to stay with relatives for a while. She, therefore, requested that petitioner take Deborah to New York for a visit. Petitioner arrived promptly in Wisconsin to pick up the girl and brought her to New York. Shortly thereafter, with respondent's knowledge, he placed Deborah in school although respondent claims that she objected to the particular school selected by petitioner. At any rate, the parents agreed that the child would be enrolled in school for the spring semester and then be returned to her mother. In mid-May, respondent changed her mind and suddenly appeared at Deborah's school demanding that her daughter be turned over to her. School authorities telephoned petitioner, and he contacted the police. Deborah continued in school, and petitioner commenced this proceeding later that month seeking custody pursuant to article 5-A of the Domestic Relations Law. While petitioner has never applied for a filiation order from any court, it is admitted by both petitioner and respondent that he is, in fact, her biological father.

The sole issue involved here is the jurisdiction of New York State to consider petitioner's custody petition under article 5-A of the Domestic Relations Law, otherwise known as the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJA is an interstate compact proposed by the National Conference of Commissioners on Uniform Laws which has been adopted by every State, the District of Columbia, Puerto Rico and the Virgin Islands following its approval in 1968 by the American Bar Association. The purpose of this statute is not only to discourage abductions and other unilateral removals of children but, in view of the high rate of family breakdowns and the easy mobility of people, to avoid conflicting court orders between separate jurisdictions concerning child custody matters, to promote cooperation with the courts of other States, as well as the exchange of information, to facilitate the enforcement of custody decrees and to assure that custody actions occur in the State with which the child and his or her parents have the closest connection (see, Domestic Relations Law § 75-b). In that regard, section 75-n of the Domestic Relations Law specifically requires that courts in New York recognize and enforce the decrees of other States, and section 75-t provides for interstate cooperation. In 1980, the United States Congress

enacted the Parental Kidnaping Prevention Act (PKPA). The PKPA, which parallels the UCCJA, is intended "to establish a national system for locating parents and children who travel from one such jurisdiction to another and are concealed in connection with such disputes, and to establish national standards under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions" (Pub L 96-611, § 7 [b] [1980]).

■ Pursuant to Domestic Relations Law § 75-d (1), a court possesses jurisdiction to render a custody determination only when 1 of 4 conditions is met. The first and foremost of the grounds supporting jurisdiction is when "(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child's home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state". Section 75-c (5) of the Domestic Relations Law defines "home state" as, in relevant part, "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months." It is clear that Wisconsin, not New York, is Deborah's home State. Petitioner brought her to New York on January 23, 1987, and this action was instituted some four months later, on May 22, 1987.

■ The second basis for jurisdiction may ostensibly be invoked where "(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships" (§ 75-d [1] [b]). However, notwithstanding the language of this paragraph, this section may not be utilized as a substitute for home State jurisdiction. As Professor Merril Sobie aptly states in the Practice Commentaries to Domestic Relations Law § 75-d (McKinney's Cons Laws of NY, Book 14, at 306):

"[This] provision is severely limited by the federal Parental Kidnapping Prevention Act. Under the federal act the alterna-

tive may be invoked only when Subdivision 1-a is inapplicable, i.e. only if there is no home state and there has been no home state for the past six months [28 U.S.C. § 1738A (c) (2) (B)]. The federal act supercedes Article 5-A by virtue of the constitutional supremacy clause; hence Section 75-d must be read as incorporating the limitation. This alternative is consequently unavailable in the vast majority of cases.

"Assuming that no state is presently the home state and none has been for the six months immediately preceding initiation of the proceeding, the plaintiff still has to surmount the dual tests of 'significant contacts with the state' and the presence within the jurisdiction of 'substantial evidence'. As interpreted by the Court of Appeals, 'substantial evidence' is synonymous with 'optimum access to relevant evidence' *[Vanneck v. Vanneck,* 49 NY2d 602, 610, 427 NYS2d 735, 404 NE2d 1278 (1980)]. 'Optimum' is not a condition which is readily attainable * * *. All in all, the alternative jurisdictional possibility of significant contacts is not of much use."

According to the Parental Kidnaping Prevention Act: "A child custody determination made by a court of a State is consistent with the provisions of this section only if * * * it appears that no other State would have jurisdiction under subparagraph (A)", which mandates six months' residency, *and* "it is in the best interest of the child that a court of such State assume jurisdiction" under the specified circumstances (28 USC § 1738A [c] [2] [B]; emphasis added). Since application of the constitutional Supremacy Clause compels that the Federal statute preempt State law *(Farrell v Farrell,* 133 AD2d 530; *Matter of Tenenbaum v Sprecher,* 133 AD2d 371; *Enslein v Enslein,* 112 AD2d 973), the best-interest-of-the-child alternative must be interpreted to include the Federal prerequisite of lack of home State jurisdiction. Indeed, in the instant matter, neither petitioner nor the Supreme Court rely upon paragraph (b) as a basis for jurisdiction herein.

██ Similarly, paragraph (d) of Domestic Relations Law § 75-d (1), which encompasses only those situations wherein it appears that no other State has jurisdiction (for example, the parties involved are migrant workers) or another State has declined to exercise jurisdiction, and it is in the best interest of the child that this State hear the case, is also inapposite to the present custody dispute. Wisconsin certainly possesses jurisdiction under the home State provision and has not refused to assume such jurisdiction. Therefore, petitioner urges that jurisdiction exists under the only remaining

ground, paragraph (c) of section 75-d (1). Paragraph (c) permits a court to accept jurisdiction when "the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child". While the word "emergency" may, arguably, be construed in a flexible manner so as to furnish a predicate for jurisdiction, in practice an emergency situation is extremely difficult to demonstrate. Thus, in order to establish an emergency, there must, in effect, be evidence of imminent and substantial danger to the child in question.

The New York State Court of Appeals declared, in *Martin v Martin* (45 NY2d 739, 742), that emergency jurisdiction may be invoked only where "the immediate physical and mental welfare of children [require], vitally and directly, that the children be retained" in this State. In *De Passe v De Passe* (70 AD2d 473, 474-475), plaintiff claimed that "defendant drinks excessively and spends much of his time away from home; that he has unreasonable spending habits, often leaving plaintiff and the children without necessities; and that defendant has been unresponsive to plaintiff's attempts to solve these problems. These allegations, though deserving of consideration in any evidentiary hearing on the substantive custody issue, do not suggest emergency circumstances in which the welfare of the children vitally requires that the courts of this State determine custody". The court in *Matter of Tenenbaum v Sprecher (supra,* at 373) also perceived the necessary emergency to the children to be an "immediate threat" *(see also, Schoeberlein v Rohlfing,* 383 NW2d 386 [Minn], wherein it was held that emergency jurisdiction could not, absent a showing of present danger, be exercised based upon the father's assertion that the children had been abused in Texas by the mother; *Matter of Hernandez v Collura,* 113 AD2d 750; *Conticello v Conticello,* 91 AD2d 1008; *Gomez v Gomez,* 86 AD2d 594).

The Supreme Court conducted a hearing in connection with this custody proceeding to determine whether there is jurisdiction in New York State. Thereafter, the court issued an opinion in which she found, in part, that "[t]he child has lived with her mother nearly all of her life and has resided with her father only since last January. Therefore, the child's significant connection is with her mother in Wisconsin, not with New York". Moreover, the court concluded that although the "testimony in this case is replete with indications of an unconventional, if not eccentric life style on the part of the

mother", that "is not sufficient to invoke emergency jurisdiction. The incidents of sexual abuse are." There were two incidents of purported sexual abuse concerning which the court observed: "Here, it has been conceded by respondent herself during her testimony and in her discussions with Dr. Foraste and Dr. Yamins that her daughter was sexually abused on two occasions in Wisconsin. The earlier incident of abuse was validated by the testimony of Dr. Foraste, respondent's own expert. He testified that he had the child make a drawing and concluded that a traumatic event occurred in the child's life which coincided, in terms of age, with the time that the mother testified that the first incident of sexual abuse took place. Dr. Foraste testified that there was a similar indication of another traumatic event which coincided in time to the second incident of sexual abuse testified to by the mother. That incident took place shortly before the child came to New York."

It is important to emphasize that the issue herein is not whether petitioner or respondent is the better parent or whether it would be in Deborah's best interest to live with her mother or her father. The only question before this court involves the jurisdiction of New York State to consider the custody petition. For this State to assume emergency jurisdiction, the facts must demonstrate an immediate and significant peril to Deborah's well-being. In that regard, it should be noted that there is absolutely no evidence that respondent, or another person introduced into the household by her, has ever physically of psychologically abused Deborah, neglected to supply her with food, clothing and shelter or, indeed, failed to love and care for her. Respondent may not be an ideal parent, but that is hardly relevant insofar as jurisdiction is concerned unless it can also be established that Deborah is in imminent danger if she is returned to her mother in Wisconsin. No such threat has been shown, and, in fact, Deborah has expressed a preference to reside with respondent.

It is true that on two occasions over a period of some years, Deborah was either sexually molested, or at least her genitals were touched, by persons unrelated to her. Neither incident, however, can be directly attributable to respondent's alleged deficiencies as a mother or to her life-style, and indeed, what happened to Deborah might have occurred to almost any child under any parental care. The first time that Deborah was molested took place when respondent was leaving the laundry room of her building, and her daughter either ran ahead or

lingered behind. The sexual abuse was committed by a neighbor, and respondent immediately notified the authorities, who arrested the perpetrator. The second, more recent, incident occurred when the daughter, another child, of Deborah's babysitter, who was a friend of respondent, apparently touched Deborah while bathing her. Neither of these two isolated instances of alleged sexual abuse nor respondent's "unconventional, if not eccentric life style" can be deemed to constitute an emergency situation supporting the exercise of jurisdiction by this State pursuant to Domestic Relations Law § 75-d (1) (c).

Although petitioner's actions may initially elicit sympathy, and his position may ultimately prevail when the child's best interest is properly examined, it is significant that by withholding Deborah from her custodial parent and her home State, Wisconsin, and, because he has the most recent physical possession, unilaterally and without authority, dictating the time, place and conditions of respondent's contacts with her child, he has engaged in precisely the conduct which the Uniform Child Custody Jurisdiction and Parental Kidnaping Prevention Acts were created to prohibit. Consequently, the Supreme Court was unwarranted in denying respondent's motion to dismiss the proceeding. Deborah should be returned to her mother in Wisconsin, and petitioner's custody application properly brought in that State.

Therefore, the order of the Supreme Court, New York County (Myriam J. Altman, J.), entered on March 31, 1988, which denied respondent's motion to dismiss the proceeding for lack of subject matter jurisdiction and granted petitioner's application for a preliminary injunction prohibiting respondent from removing the subject child from New York without further court order pending a final custody determination, should be reversed, on the law, respondent's motion to dismiss granted, the preliminary injunction vacated, and petitioner should be directed to return the child to respondent, without costs or disbursements.

ELLERIN, J. (concurring). I agree with the majority that jurisdiction properly lies in Wisconsin, but believe that the child should be permitted to complete the current school term at the school in which she is presently enrolled. Accordingly, while I would direct judgment in favor of respondent, I would provide that the child be returned to respondent no later than June 30, 1990, unless petitioner obtains an order from the Wisconsin courts directing otherwise.

SULLIVAN, J. P., Ross and CARRO, JJ., concur with MILONAS, J.; ELLERIN, J., concurs in an opinion.

Order, Supreme Court, New York County, entered on March 31, 1988, unanimously reversed, on the law, respondent-appellant's motion to dismiss granted, the preliminary injunction vacated, and the petitioner-respondent directed to return the child to the respondent-appellant, without costs and without disbursements.