# In the Matter of MAUREEN S., Appellant-Respondent, v MARGARET S., Respondent-Appellant.

Second Department, December 28, 1992

APPEARANCES OF COUNSEL

*Patrick Kevin Brosnahan, Jr.,* Babylon, for appellant-respondent.

*Legal Aid Society of Suffolk County,* Hauppauge *(Barbara Lynaugh* of counsel), for respondent.

### OPINION OF THE COURT

MILLER, J.

■■ The narrow issue presented by this appeal is whether the New York Family Court properly invoked its emergency jurisdiction powers pursuant to the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a *et seq.;* hereinafter UCCJA) to temporarily modify a custody award of another State. We hold that it did. The broader question to be considered, however, concerns the appropriate communicative procedures provided for by the UCCJA, and how in this case the New York Family Court did not utilize them to their fullest.

I

The child Catherine was born in California on October 29,

1983. Her parents, Margaret and Thomas, married in California shortly after her birth. However, the marriage did not last, and, in December 1984 Margaret filed for divorce in California. By order dated March 4, 1985, of the Superior Court of the State of California, County of San Diego, the parents were awarded temporary joint custody of Catherine with residential custody with her mother. That order directed the parties to seek approval from the California court before seeking a custody change in any other jurisdiction.

Neither Margaret nor Thomas ever finalized their divorce. Nevertheless, Margaret "married" again in California to Robert D. In October 1988 Margaret, Robert D., and Catherine traveled to Wisconsin. About one month later, Catherine was sent to Suffolk County for what was to be a month-long visit with her father and his parents. While she was there, Catherine made statements that led her grandparents to believe that she was being sexually abused by Robert D. Because of these allegations, Catherine's grandmother, Maureen S. (hereinafter the petitioner) contacted the Suffolk County Child Protective Services and then petitioned the New York Family Court, Suffolk County, for custody of the child.

Cognizant of the jurisdictional constraints attendant to a proceeding to modify a foreign State's custody order, the New York Family Court, by order dated October 18, 1989, initially granted the mother's motion to dismiss, holding that under the original California custody determination, California had continuing jurisdiction over disputes involving Catherine's custody. The mother thus obtained a writ of habeas corpus and came to New York to get her child. However, on the petitioner's motion to reargue, the New York Family Court agreed to conduct a hearing on the issue of whether an emergency existed as defined by Domestic Relations Law § 75-d (1) (c) (ii), and thus whether the New York Family Court had jurisdiction as a result of this emergency to modify the California custody order. After contacting the California court and determining that the divorce case was then inactive in that State, and after ascertaining that there were no other relevant proceedings then pending, the New York Family Court awarded the grandmother temporary custody.

The emergency hearing was held in April 1990. Catherine's mother did not appear to testify. However, a series of witnesses, including the child's therapist, a clinical psychologist with the Court Consultation Unit, and a Child Protective Services caseworker, testified that there was sufficient psycho-

logical evidence to sustain the abuse allegations despite the lack of opportunity to interview the child's mother in California. Additionally, the medical consultant to Child Protective Services testified that he had administered a "toluidine blue dye test" and had found trauma to the child's vagina consistent with possible molestation. In an order dated January 17, 1991, the New York Family Court held that an emergency existed. The court found that the mother's failure to refute the allegations that she was still living with the abuser "constrain[ed]" the court to hold that the evidence of abuse, while unclear, was adequate to find Robert D. a "present and substantial danger" to Catherine's welfare. The New York Family Court scheduled a second hearing to determine what, if any, action was appropriate "to protect the child, subject to more permanent proceedings in the forum state".

The second hearing began on June 12, 1991. Catherine's mother, Margaret S., testified that she had left Wisconsin and returned to California without Robert D. in March 1989 and that she had not lived with him since. She stated that California had denied her application for an order of protection from Robert D. because she was unable to present sufficient evidence of violence. Additionally, she explained that she had not divorced Robert D. because she could not afford an attorney. The petitioner noted that Margaret had given birth to another child during the course of the proceedings and contended that Robert D. might well be the father and, therefore, have visitation rights in the household. The mother denied that Robert D. was the father of her youngest child. The court denied the petitioner's request to appoint a Law Guardian and conduct a home study in California.

In the order dated September 27, 1991, the New York Family Court directed that Catherine be returned to her mother. The court found that the mother's "credible" and "wholly unrefuted" testimony that Robert D. was no longer living with her terminated the court's emergency jurisdiction.

When the petitioner did not comply with the order to return Catherine to her mother, the mother sought another writ of habeas corpus. The petitioner advised the New York Family Court that Catherine's father, Thomas, had commenced a matrimonial action in California, and the New York Family Court confirmed this by contacting the California Court. The California court requested that the New York Family Court proceedings be stayed. However, the New York Family Court did not accede to this request and directed that petitioner

produce the child in court on October 21, 1991, so that her physical custody could be turned over to her mother. On October 28, 1991, this court granted the petitioner's application for a stay pending appeal.

## II

■ We agree with the conclusion of the New York Family Court that it lacked jurisdiction to make a permanent modification of custody in this case. Both Federal and State law dictate that modification jurisdiction remains with the court which granted the original custody determination as long as the child or any contestant continues to reside in that State (see, 28 USC § 1738A [d] [Parental Kidnaping Prevention Act]; Domestic Relations Law § 75-o [1]). Since Catherine's mother remains a California domiciliary, California has continuing jurisdiction over modification of its original order granting the mother temporary residential custody (28 USC § 1738A [b] [3]; see, Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-c, at 299; Capobianco v Willis, 171 AD2d 834; Conticello v Conticello, 91 AD2d 1008; see also, Plouffe v Salas, 148 Misc 2d 143). Therefore, since California has a colorable claim to jurisdiction, a New York court must defer its exercise of jurisdiction until it has communicated with the California court to resolve the jurisdictional question (see, Vanneck v Vanneck, 49 NY2d 602, 606; Domestic Relations Law § 75-h). Indeed, even if the child and all of the contestants in this case had moved permanently from California, New York would still be required to consider that California had a colorable claim to jurisdiction because it had recently been the child's home State and possessed not only a close connection to Catherine and her mother, but substantial evidence regarding her welfare at the commencement of this proceeding (see, Domestic Relations Law § 75-h [3]; Valentin v Valentin, 167 AD2d 390; see also, Plouffe v Salas, supra).

Moreover, in the context of interstate custody litigation, the best interest of the child is served when the petitioned court assures that the litigation takes place in the State having the "closest connection" to the child and the child's family and where "significant evidence" is readily available (Domestic Relations Law § 75-b [1] [c]; 28 USC § 1738A). Since California is the State of the mother's residence and the mother was the primary custodian of the child from birth until the child's

"visit" to New York in 1988, "significant evidence" as to the safety of the child in her mother's custody exists in California.

In the order dated January 17, 1991, the New York Family Court properly exercised its emergency jurisdiction to protect the child from potential sexual abuse, since the allegations were supported by a preponderance of the evidence. It is well settled that a court may make a temporary change in custody to protect children from "immediate threat to the well-being of the children" *(Matter of Tenenbaum v Sprecher,* 133 AD2d 371, 373; *see, Matter of Michael P. v Diana G.,* 156 AD2d 59; Domestic Relations Law § 75-d [1] [c] [ii]; 28 USC § 1738A [c] [2] [C]). In this case, the child reported that she was being sexually abused by a member of her household. Expert witnesses provided sufficient evidence to sustain those allegations. The New York Family Court thus properly granted temporary custody to the child's grandmother because, by a preponderance of the unrefuted evidence before the court, returning the child to the home shared by her mother and the abuser would have placed the child at emotional and physical risk *(see, Matter of Katrina W.,* 171 AD2d 250, *appeal dismissed* 79 NY2d 976, *cert denied sub nom. Rosalyn W. v Suffolk County Dept. of Social Serv.,* — US —, 113 S Ct 217; *Matter of Severio P. v Donald Y.,* 128 Misc 2d 539; *Kasper v Kasper,* 792 P 2d 118 [Utah]; *Nussbaumer v Nussbaumer,* 442 So 2d 1094 [Fla]).

### III

■ However, the New York Family Court failed to fully utilize the communication and cooperation mechanisms statutorily available to it under New York's adoption of the UCCJA. "[W]here the claim of [another] State jurisdiction is colorable, a New York court must heed the statutory command to defer adjudicating the dispute and communicate with the foreign court" *(Vanneck v Vanneck,* 49 NY2d 602, 610-611, *supra; see,* Domestic Relations Law §§ 75-r, 75-s, 75-t; Comment, UCCJA § 18, 9 ULA 318 [the court is empowered to "initiate the gathering of out-of-state evidence which is often not supplied by the parties in order to give the court a complete picture of the child's situation, especially as it relates to a custody claimant who lives in another state"]). In the instant case, the New York Family Court, in the order dated September 27, 1991, prematurely declared an end to its emergency jurisdiction based solely on the testimony of the mother that she was no longer living with the abuser and that

he was not the father of her youngest child. At that time, the New York Family Court was unaware whether the California court would accept jurisdiction over further child protective proceedings, and it also failed to utilize available statutory provisions to elicit evidence relevant to the existence of an emergency or its cessation. Indeed, at the time it dismissed this proceeding, the New York Family Court knew only that the California divorce action was dormant, and it had no assurances that California authorities would even be aware that Catherine and her mother would be returning to the home State for it to provide necessary follow-up services. Based exclusively on the mother's unsupported testimony, the New York Family Court washed its hands of the emergency it found to have existed, and of any responsibility for Catherine's well-being. At a minimum, before declaring the emergency to be over, the New York Family Court should have granted the petitioner's application to appoint a Law Guardian and to request that authorities in California conduct a home study to verify the mother's statements that the abuser was no longer a member of the household to which Catherine was being returned (see, Domestic Relations Law § 75-s).

Had the New York Family Court utilized the tools available to it, it would have contacted and cooperated with the California court when the grandmother first petitioned for a change in custody, to determine whether New York should assume full jurisdiction over the case. If, at that juncture, California had accepted jurisdiction, then the New York Family Court should have cooperated with the California court, where a final custody determination would have been made following a hearing. If California declined jurisdiction, the New York Family Court could have requested that California assist in gathering evidence under the provisions of the UCCJA (Domestic Relations Law §§ 75-r, 75-s, 75-t). The New York Family Court also could have ensured access to the mother's testimony at the emergency hearing by using the provision of the UCCJA which would permit California to order the mother to appear in New York and for her traveling expenses to be charged to the other party (see, Domestic Relations Law §§ 75-r, 75-s [1]; see, Renno v Evans, 580 So 2d 945 [La]; Umina v Malbica, 27 Mass App Ct 351, 538 NE 2d 53; Stuart v Stuart, 516 So 2d 1277 [La]; Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, at 302). Proper utilization of the communication and cooperation provisions of the UCCJA could have led to a sounder resolution of this matter.

## IV

■ Subsequent to the oral argument of these appeals, this Court communicated with the Superior Court of California *(see, Singer v Singer,* 79 AD2d 680) and learned that by order dated February 28, 1992, the Superior Court of California, County of San Diego, awarded temporary visitation with the child to the mother pending our disposition. The California order also provided for intervention by California Child Protective Services during visitation. Since California has now indicated its willingness to assume jurisdiction over the divorce and custody proceeding in which it, as the home State, will provide for Catherine's best interests, affirmance of the New York Family Court's dismissal of the grandmother's petition is appropriate. Furthermore, to comply with the mandate of judicial cooperation expressed by the Parental Kidnaping Prevention Act and the UCCJA, the New York Family Court shall provide the California court with all information necessary to decide custody in the best interests of the child *(see, Singer v Singer, supra).* The New York Family Court shall make available, upon request by the California court, all appropriate material, which may include, *inter alia,* transcripts of proceedings in this State, and forensic and probation reports. Counsel for the mother is directed to file a copy of this order with the clerk of the Superior Court of California, County of San Diego, in case number D202794, to ensure that that court is cognizant of our directive to the New York Family Court. Only by fulfilling the communicative obligations imposed by the Patental Kidnaping Prevention Act and the UCCJA, can the courts of this State advance the best interests of children within its jurisdiction.

BALLETTA, J. P., RITTER and COPERTINO, JJ., concur.

Ordered that the appeal and cross appeal from the order dated January 17, 1991, are dismissed, without costs or disbursements, as that order was superseded by the order dated September 27, 1991; and it is further,

Ordered that the order entered September 27, 1991, is affirmed, without costs or disbursements; and it is further,

Ordered that counsel for the respondent is directed to file a copy of this opinion and order with the Superior Court of California, County of San Diego.