Matter of Noel D. v Gladys D. (2005 NY Slip Op 50092(U))

[*1]

Matter of Noel D. v Gladys D.

2005 NY Slip Op 50092(U)

Decided on February 1, 2005

Family Court, Queens County

Modica, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 1, 2005

Family Court, Queens County
In the Matter of a Custody Petition NOEL D., Petitioner.
against
GLADYS D., Respondent.
V-01295-05/05A

Salvatore J. Modica, J.
Upon the petition in this case and such other papers on file with the Court, and the proceedings had prior hereto on January 11, 14, and 20, 2005, the decision and order of the Court on the petitioner-father's motion is as follows:
On January 11, 2005, the petitioner, Noel D., appeared before this Court and requested the issuance of a Writ of Habeas Corpus, directing the respondent, Gladys D., to produce their two children in court so that they could be returned to him in accordance with a temporary order of custody issued by a judge of the State of Illinois. The petitioner's writ is granted to the extent that the respondent, Gladys D., is given a temporary order of custody and is directed to return to the State of Illinois on February 18, 2005 to litigate the divorce proceeding currently pending there. A temporary order of protection is also issued on behalf of Ms. D. and the children. The Court's orders of custody and protection will remain effective until July 16, 2005 or until a Court of the State of Illinois, with jurisdiction over the parties, and with authority to make decisions of custody and visitation concerning the parties and the two subject children in this case, makes a determination to the contrary.
The following constitutes the Court's findings of facts and conclusions of law:
The parties were married in Waukegan, Illinois on January 17, 1997 and have two children, X. G., who was born on May 26, 1997, and X., who was born on October 11, 2003. [*2]The petitioner is in the United States Navy and holds the rank of Chief, the highest rank for an enlisted person in that branch of the armed forces. The respondent is a nurse and currently employed as such in the State of New York. On July 16, 2003, Judge Jane Waller, of the Nineteenth Judicial Circuit in Lake County, Illinois, issued a final order of protection against Mr. D. on behalf of Ms. D. and her son, X.G. In April 2004, Ms. D. left the State of New York with her two children and moved to her parents' home in New York City. In May 2004, the petitioner filed for divorce in the Sate of Illinois and, upon Ms. D.'s default, the marriage was dissolved on September 28, 2004 by Judge Sarah P. Lessman of the Nineteenth Judicial Circuit in Lake County, Illinois. Judge Lessman, however, reserved decision on the issue of custody of the minor children of the parties. On December 27, 2004, after Judge Lessman denied the respondent's written request for an adjournment, Mr. D. was given a temporary order of sole custody of the children.
A copy of the Illinois order of protection was presented to this Court on January 14, 2005. It reveals that Mr. and Ms. D. were both present in court when the protective order was issued and that Mr. D. was represented by an attorney. The order of protection includes a finding by the Illinois Court that Mr. D. has abused Ms. D. in the past and that the Court's intervention was necessary to protect Ms. D. and her child from irreparable harm or continued abuse. The order further notes that Ms. D. is the primary caretaker of the children. On page one of this order, next to what is labeled a "BHV" code, it is noted that Mr. D. is suicidal. In addition, attached to the order of protection is a two-page statement by Ms. D. in support of her requests for protection and the rehabilitation of her then husband. In that statement, she detailed incidents of domestic violence committed by Mr. D. against her and presented information about him, from which it can certainly be inferred that he is mentally unstable. These allegations, upon which Judge Waller apparently relied in issuing the order of protection, are quite disturbing to this Court
Ms. D.'s statements to Judge Waller exposed the petitioner as a very disturbed, irrational, controlling, and jealous man, who has threatened to kill her numerous times, physically abused her, and, on four occasions, attempted to kill himself. One such suicide attempt occurred on January 3, 2003 when the petitioner hanged himself in the basement of their home. A suicide note, written by Mr. D., was recovered by the Waukegan Police Department. She also described another incident that occurred in January 2003 as she and her then six year old son were passengers in a car driven by Mr. D. It appears that while listening to Ms. D.'s cell phone conversation with another person, the petitioner became enraged, grabbed the cell phone from Ms. D.'s hand, struck her repeatedly with this phone, slapped both her cheeks, and smashed her head numerous times against the car window. In response to the pleas of his wife to end his attack upon her, Mr. D. stopped the car, got out, laid down on the road, and began to sob uncontrollably.
In March 2003, as Ms. D. was preparing to go to work, the petitioner, who was aware that his wife was one month pregnant with their second child, began screaming [*3]at her, and then spit at and slapped her in the face. This incident left the respondent so distraught that she became physically ill and was unable to go to work. The following day, she reported the incident to her supervisor.
Ms. D. related other examples of Mr. D.'s bizarre behavior in the affidavit attached to the order of protection. These not only included incidents of physical and mental abuse, as noted above, but also revealed the petitioner's desire to control his wife's daily activities. For example, the petitioner removed all his wife's money from her bank account, recorded her telephone conversations, and questioned people whose telephone number happened to appear on her cell phone. And when Ms. D. became unemployed as a result of her pregnancy, Mr. D. refused to provide her and their son with any financial support. Finally, the respondent informed Judge Waller that the petitioner, who has been diagnosed to be mentally ill by both a psychologist and psychiatrist, told their neighbors that the respondent "will be found on the street lifeless, because he will see to it and will not stop [un]til it [is] done."
The order of protection issued by Judge Waller, which expires on July 16, 2005, in essence, prohibits the petitioner from harassing, assaulting, intimidating, or neglecting Ms. D. and her son, X.G. (The parties second child, X., had not yet been born.) The order also prohibits the petitioner, Mr. D., from removing the children from Illinois. [FN1]
In addition to the information contained in the Illinois order of protection, this Court had the benefit of hearing from the respondent, under oath, on the record on January 11, 2005, when she appeared before this Court. Following Mr. D.'s initial appearance before this Court on the morning of January 11, 2005, Ms. D. arrived at the courthouse prior to the luncheon recess. Given the Court's understanding that the petitioner was still in the courthouse, the case was re-called so that both sides could be heard on the record. When the Court's law clerk attempted to conference the case with the parties, she learned that Mr. D. had left the courthouse. Nevertheless, the Court decided to hear from Ms. D., in open court, on the record. At that time, the Court [*4]advised the respondent of Mr. D.'s petition and that she was entitled to an attorney. In response to the Court's inquiry, Ms. D. agreed to submit herself to the jurisdiction of this Court. The respondent then informed the Court that she had an order of protection from the State of Illinois, that she left Illinois in April 2004 to escape the mental and physical abuse inflicted upon her by the petitioner, a member of the United States Navy, and that the petitioner was mentally ill and suicidal. [FN2] She further informed the Court that Mr. D. had been hospitalized by the Navy as a result of his suicide attempts and mental illness. [FN3] Given the information presented to the Court, the Court issued a temporary order of visitation to Ms. D. and prohibited the petitioner from interfering with her care and custody of their two children. Finally, given Ms. D.'s insolvency  caused mainly by the fact that she had been the victim of domestic violence  and that she had only recently begun a new job, the Court assigned an attorney to represent her. The matter was adjourned to January 14, 2005 for both sides to appear.
On January 14th, the petitioner appeared in court with a retained attorney. A Law Guardian was appointed by the Court to represent both children. The respondent's attorney, however, had a family emergency and could not be present. Since the petitioner's attorney was adamant in his position that this Court had absolutely no authority to act in light of the temporary order of custody from the State of Illinois, this Court decided to hear from the petitioner, the respondent, and the attorneys actually present so that a clear record could be made as to the Court's jurisdiction or authority under the Uniform Child Custody Jurisdiction and Enforcement Act [hereinafter UCCJEA] as set forth in Article 5-A of the Domestic Relations Law.On that date, in the presence of the petitioner and his attorney, Ms. D. again informed the Court about the order of protection that had been issued on her behalf by a judge of the State of Illinois. She then explained that she had left the State of Illinois in April 2004 because of Mr. D.'s mental instability, which included several attempts to end [*5]his own life, and to escape his continuing physical and emotional abuse, a pattern of behavior that was endangering both her and the children. Ms. D. then revealed that she had been a civilian nurse in the United States Navy and that it was the Navy which had helped her relocate to New York. Specifically, Janice Brown and Catherine Loisel of the Navy Abuse Team aided her in both planning and executing the move to New York. Finally, she indicated that Dr. Kevin Brown, a psychologist, had provided counseling services for her and the petitioner.

Petitioner's attorney confirmed Ms. D.'s allegations of domestic abuse by presenting a letter from Dr. Brown, dated January 4, 2005. Dr. Brown, who is a staff psychologist at the Naval Hospital in Great Lakes, Illinois, revealed that the petitioner was referred to his clinic for domestic counseling by the Family Advocacy Program at Great Lakes. On May 27, 2004, the petitioner commenced treatment with Dr. Brown's clinic and completed such treatment on October 25, 2004. It is interesting to note that Mr. D.'s decision to seek such help occurred a month after his wife's exodus from the household that they shared in Illinois and almost contemporaneously with his filing for divorce in that state.

The Law Guardian next informed the Court that he had spoken to 7 year old X.G., who told him that he likes living in New York with his grandparents and mother, that he is afraid of his father, and that he does not wish to have visitation with his father. As an example of why he fears his father, X.G. described an incident in which he was awoken from sleep by the sounds of loud yelling between his mother and father, followed by crashing sounds. The next morning, this child saw broken dishes strewn all over the floor. When he inquired of his mother what had happened, he was told that his father had thrown the dishes against the wall. Although the child told the Law Guardian that he has never witnessed his father physically abuse his mother, he did reveal to his attorney that he has often witnessed heated verbal exchanges between his parents and that his father is the primary aggressor. The child is currently enrolled in school in New York. According to the Law Guardian, it would be emotionally devastating for this child to leave New York and return to Illinois.
The Court, invoking its temporary emergency jurisdiction under Domestic Relations Law § 76-c, then informed both sides that it would continue the temporary order of visitation in this case on behalf of the mother, as well as the temporary order that the father not interfere with the mother's care and custody of the children. The parties were further informed that the Court would arrange to speak that afternoon to Judge Sarah Lessman, who granted the Illinois divorce judgment and custody order on default, in order to discuss the jurisdictional issue. The Court adjourned the matter to January 20, 2005 for Ms. D.'s attorney to appear.
On January 14, 2005, at about 3:00 p.m., this Court spoke to Judge Sarah Lessman. At some point in the conversation, Judge Lessman revealed that this Court was on a speaker phone, that the petitioner's Illinois attorney was present in the room, and that [*6]a contemporaneous record was being of the conversation. [FN4] This Court informed Judge Lessman what had transpired in New York on the dates of January 11th and 14th. Judge Lessman confirmed that a custody proceeding, filed by Mr. D., was pending before her, stated that she intended to exercise continuing jurisdiction, and expected the respondent to return back to Illinois to litigate that action. When this Court indicated that it was considering issuing a temporary order of custody to Ms. D., Judge Lessman expressly disagreed with that position. In her view, the order of custody she issued to Mr. D. in December 2004 should not be modified. Judge Lessman did, however, acknowledge that when she issued the temporary order of custody to Mr. D., she was unaware of her colleague's final order of protection, unaware of Mr. D.'s suicide attempts, unaware of the Navy's alleged role in relocating Ms. D. to New York, and unaware that Mr. D. had been in counseling for domestic violence.
This Court informed Judge Lessman that, based on the communication with her, it appeared that the State of Illinois had the right to exercise continuing exclusive jurisdiction over the custody proceeding filed there. See Domestic Relations Law § 76-a. This Court also indicated that it was prepared to give Ms. D. a temporary order of visitation. It was agreed that the respondent would be required to return to Illinois by February 18, 2005.
Of course, this Court was not bound by its statement to Judge Lessman. Nor, could that statement represent the Court's final decision as to this matter. Specifically, neither the respondent nor her attorney was present during the communication between the two courts. Accordingly, this Court's decision on jurisdiction on January 14th was necessarily subject to hearing from the respondent and her attorney and giving them "an opportunity to present facts and legal arguments before [making] such a decision on jurisdiction..." See Domestic Relations Law § 75-i(2).
Upon further reflection, the Court realizes that the communication with Judge Lessman was statutorily required, but not for the purpose of trying to resolve the jurisdictional issue or exploring whether New York was the more appropriate forum for this family pursuant to Domestic Relations Law § 76-e. See also Domestic Relations Law § 76-f. First, Ms. D. has not filed any type of petition before this Court. [FN5] But more [*7]important, Mr. D.'s petition essentially seeks registration and enforcement of the Illinois temporary order of custody; it is not a petition for custody. See Domestic Relations Law §§ 77-b & 77-d. Specifically, a petition to enforce a child custody determination made by another state is not a child custody proceeding within the meaning of title three of the UCCJEA. See Domestic Relations Law § 75-a(4). Accordingly, since neither party has filed a petition for custody before this Court, it was not necessary for the two courts to communicate with one another as is otherwise required under Domestic Relations Law § 76-e(2). [FN6]
Nevertheless, for this Court to exercise emergency and temporary jurisdiction under Domestic Relations Law § 76-c, the Court was required to reach out to Judge Lessman, attempt to resolve the emergency, and then give both sides an opportunity to be heard. See Domestic Relations Law § 76-c(4); see also Domestic Relations Law § 75-i. Therefore, the two issues before the Court are (1) whether Judge Lessman's order was made in substantial conformity to the requirements of the UCCJEA and is, thus, entitled to full faith and credit [see Domestic Relations Law §§ 77-b & 75-g & 76-d; see eg Cynthia Marie S. v. Allen Wayne L., 228 AD2d 249 (1st Dept. 1996); Harrison v. Harrison, 116 AD2d 553 (2nd Dept. 1986)] and, if so, (2) whether this Court should exercise temporary and emergency jurisdiction under Domestic Relations Law § 76-c(4) in order to provide protection to the respondent and her children.
On January 20th, both sides appeared before the Court for oral argument. The Court informed the parties that, at the respondent's request, she was entitled to a hearing under Domestic Relations Law § 77-d(4) to contest the validity of the Illinois child custody determination. During this proceeding, the respondent's attorney maintained that Ms. D. had not been personally served in the Illinois action. It was subsequently revealed by Mr. D.'s attorney that service was made by publication. In response, Ms. D.'s attorney stated that he intended to establish at the hearing that the petitioner knew that the respondent was living with her parents in New York City and that service by publication was, thus, not authorized. At some point during this proceeding, the Court indicated to both sides that it intended to invoke the emergency powers available under Domestic Relations Law § 76-c. The Court then proposed that if the respondent waived her right to a hearing under Domestic Relations Law § 77-d, it would issue her a temporary order of custody and a temporary order of protection, conditioned on her returning to the State of Illinois to litigate the custody proceeding pending there. At this time, the respondent expressly agreed to waive her right to a hearing and return to Illinois. The respondent further stated that she intended to return to Illinois in order to move to vacate both the default judgment of divorce and the order of custody on the ground that she was not properly served. [FN7]
Given the respondent's waiver of her right to a hearing, the Illinois order of temporary custody to the petitioner, which has been registered before this Court, is accordingly confirmed. See Domestic Relations Law § 77-d(6). The Court further recognizes the Illinois custody determination and enforces it solely to the extent that the respondent is given a temporary order of custody of the two children and is directed to return to Illinois.
Contrary to the petitioner's contention, the Court's ruling, enforcing the Illinois order to the extent of requiring Ms. D. to return to Illinois, but granting her temporary custody of the two children, is, in no way, an unauthorized modification of the Illinois order granting Mr. D. temporary custody of the children. This Court's authority to, essentially, modify the Illinois temporary order of custody is contained in the UCCJEA, as set forth under Domestic Relations Law § 77-e(2), which, in pertinent part, provides:

[A] court of this state shall recognize and enforce, but may not modify, except in accordance with title two of this article (emphasis added), a registered child custody determination of [*8]another state.
Title two of the UCCJEA expressly authorizes a court to exercise "temporary emergency jurisdiction if the child is present in [the court's] state and it is necessary to protect the child, a sibling or parent of the child." See Domestic Relations Law § 76-c(1). So clearly, as long as a child is present in a state and that child or a sibling, or that child's parent requires protection from a court, then the UCCJEA expressly permits a court to exercise jurisdiction and provide such protection, even if it involves modifying a custody determination by another state.
 In this case, the respondent's children were actually present in New York State when the decision to exercise jurisdiction was considered by this Court. The first requirement of the statute, therefore, has certainly been satisfied. See Domestic Relations Law § 76-c(1); see eg Blend v. Jones, 248 AD2d 808 (3rd Dept. 1998). Second, given all the information that this Court knows about this family, it is quite obvious that an emergency exists, and that Ms. D. and her children require protection from the petitioner, thus satisfying the second requirement of Domestic Relations Law § 76-c(1).
In finding that an emergency exists within the meaning of Domestic Relations Law § 76-c(1), this Court bases its finding on the facts demonstrating that Mr. D. is a very disturbed man, with serious emotional problems. This assessment of the petitioner has been recognized even by the State of Illinois, as reflected in Judge Waller's final order of protection issued against Mr. D. on behalf of his family. It is noteworthy that despite her then husband's violent behavior, his suicide attempts, and his tendency to exert control over her, Ms. D.'s first inclination was not to flee the State of Illinois, but rather to get the respondent the help he so desperately needed. She did this by going to court in Illinois and requesting that Judge Waller intervene to protect her and her children and to try and rehabilitate her then husband. Her attempts to have his behavior modified for the benefit of the family were obviously unsuccessful. For this reason, she fled to the only resource available to her, namely, her parents, who were living in New York. Given the prior violence in the household, this Court has serious concerns for the safety of Ms. D. and her children. In the Court's view an order of custody and protection is necessary to assure that Ms. D., not the petitioner, continues as the primary caretaker, and that she and the children are not exposed to any further domestic violence. See Sobie, Practice Commentaries, McKinney's Consolidated Laws of NY, Book 14 Domestic Relations Law Act § 76-c, at 123 (2004). More important, in light of the substantial and credible allegations that Mr. D. has severe emotional problems, the Court cannot seriously consider entrusting him with the care and custody of two very young boys, one of whom is afraid of him and wants no contact with him. See eg Maureen S. v. Margaret S., 184 AD2d 159 (2nd Dept. 1992).
It is also important, though certainly not dispositive [see eg Mitchell v. Mitchell, 117 Misc 2d 426 (Sup. Ct. West. Co. 1982)], that X.G., who has been living in New York for almost 10 months, remain in the school he is currently attending and finish out the school year there, not in Illinois. As the Law Guardian represented, X.G. is quite happy in New [*9]York, is well-adjusted, and enjoys living in his grandparents' home. This child is also quite aware of the violence that took place in his household, which explains why he is afraid of and does not wish to see his father. Given the dynamics of this family, it is simply not in the best interest of this child to be removed from the State of New York at this time.
This Court recognizes that the decision to exercise temporary emergency jurisdiction and modify custody is substantially different from the temporary order of visitation that the Illinois Court was told would be given when the two courts spoke by telephone. Nevertheless, this Court has fulfilled the mandate of the UCCJEA by communicating with Judge Lessman and attempting "to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order." Domestic Relations Law § 76-c(4). Although the two Courts may disagree over the extent of protection that needs to be afforded to Ms. D. and the children, it must be remembered that the parties are before this Court, which, presently, has the ultimate responsibility of determining what protection will be adequate under the circumstances. In the Court's view, handing the two children over to Mr. D., given all that this Court knows about him, would be a reckless abdication of its responsibilities and would place the children "in imminent risk of harm." See eg Domestic Relations Law § 76-c(3); cf. Martin v. Martin, 45 NY2d 739 (1978); Matter of Lawyers for Children Inc. v. Vanessa E., 190 AD2d 134 (1st Dept. 1993). This Court is duty bound to take the necessary steps to ensure the safety and security of Ms. D. and her children. Giving Ms. D. a temporary order of custody and temporarily allowing the children to remain in New York provides the respondent and her children with that necessary protection, and, indeed, is consistent with Judge Waller's determination in granting the original order of protection.
Indeed, this Court had more information about this family than Judge Lessman had when she issued her order in December 2004. Since only the petitioner appeared before her in Illinois, Judge Lessman quite understandably did not know about the Illinois order of protection, the history of violence in the household, that Mr. D. tried to end his life several times, and the allegation that the Navy helped relocate the respondent and the children to New York. Judge Lessman also did not have the benefit afforded this Court of having both sides appear before her under oath and the opportunity to assess their demeanor and credibility. It should be noted that the Court found Ms. D. to be forthright and candid. Finally, given the new information, there now exist compelling reasons for the Illinois Court to reconsider and discontinue the order of temporary custody issued to Mr. D. in December 2004. The orders issued by this Court give Ms. D. adequate time to go to Illinois, get legal representation, and make the necessary applications before the Court there, while, simultaneously, preserving the safety and security of the respondent and her children. Stated another way, this Court's decision advances the underlying purpose of the UCCJEA in that it provides Ms. D. with necessary emergency relief and sufficient time to return to Illinois and obtain a similar order from the State of Illinois, without compromising the safety and security of Ms. D. or her children, or divesting Illinois of jurisdiction. See Domestic Relations Law § 75(2); see also Domestic Relations Law § 76-c(3); see eg Matter of W.R.N., NYLJ February 17, 2004 p. 22 c. 3 (Fam. Ct. Nassau [*10]Co.)
Accordingly, subject to the respondent returning to the State of Illinois on February 18, 2005 and appearing in the custody proceeding pending there, it is ordered that the respondent is given a temporary order of custody of the two children. The Court also permits the respondent's children to remain in New York so that X.G. can complete the current school year. The respondent is further granted an order of protection to the extent that the petitioner is not to interfere with her care and custody of the two children or remove them from her control. The Court's orders of custody and protection will remain effective until July 16, 2005 or until a Judge of the State of Illinois, with jurisdiction over the parties, and with authority to make decisions of custody and visitation concerning the parties and the two subject children in this case, makes a determination to the contrary.
This constitutes the decision and order of this Court.
Dated: February 1, 2005
 
Salvatore J. Modica 

Footnotes

Footnote 1: On page 10 of the order of protection, Judge Waller provided a brief explanation as to why she did not issue any remedies involving property. Because her explanation is handwritten, some of the words are illegible. What this Court could decipher reads as follows:
The petitioner appeared in court and informed the court that she wishes to resume a marital relation and that she do [words illegible] upon counseling through the Navy. Respondent will return home upon Navy [word illegible] services deems it safe for the respondent and for the parties to cohabit.

Footnote 2: On January 14, 2005, the petitioner's attorney stated on the record that this Court engaged in an ex parte conversation with the respondent. Such a conversation never occurred between this Court and the respondent. A conversation, however, did take place between the Court's law clerk and the respondent prior to the case being re-called on January 11th. The substance of that conversation, a portion of which has been included in this opinion, was placed on the record in open court by this Court. 

Footnote 3: It must be noted that when Mr. D. appeared before this Court on January 11th, it appeared that he had difficulty understanding questions. For example, when the Court questioned the petitioner, he stared blankly at the Court for a long period of time and was slow to respond. The Court at first thought that the petitioner was a man of limited intelligence. When informed, however, that the petitioner held the rank of chief in the Navy, the Court realized that this initial impression of him was obviously wrong. Given Mr. D.'s demeanor on January 11th, it is not difficult to accept Ms. D.'s allegation that he has serious psychological problems.

Footnote 4: Given that the State of Illinois adopted the UCCJEA in 2004, it is obvious that Judge Lessman sought to comply with the requirements of this Act. See eg Domestic Relations Law § 75-i(4). It should be noted that, by this opinion, the Court is in compliance with those same requirements. See Domestic Relations Law § 75-i(5).

Footnote 5: Even if the respondent filed a petition for custody in New York, this Court would not have had jurisdiction over the parties. Specifically, for this Court to modify the custody determination of Illinois, it must first have jurisdiction to make an initial custody determination. See Domestic Relations Law § 76(1). Given that Mr. D. filed the divorce proceeding in Illinois a month after the respondent moved to New York, this Court certainly does not have home state jurisdiction under the UCCJEA . See Domestic Relations Law § 75-a(7); see also Domestic Relations Law § 76-(1)(a). Of course, even in the absence of home state jurisdiction, this Court potentially could have obtained jurisdiction given that the respondent and her children have been living in New York with her parents for almost 9 months, and, thus, arguably, have a significant connection to this state, making New York the more appropriate forum for a custody determination. See Domestic Relations Law § 76(1)(b)(i). Nevertheless, for this Court to obtain jurisdiction under this provision, Illinois, the home state, would first have to decline jurisdiction. Id. It was abundantly clear by the Court's telephone conversation with the Illinois Court that it was unwilling to do so. As noted in this opinion, however, these provisions, do not prevent the Court from modifying custody under the temporary emergency jurisdiction provision of the UCCJEA as set forth in Domestic Relations Law § 76-c. In any event, given that Ms. D. owns a house with the petitioner in Illinois, it is obviously necessary for her to return to that forum and litigate the divorce proceeding pending there. 

Footnote 6: That Ms. D. apparently has filed a petition for child support in the Queens County Family Court does not implicate Domestic Relations Law § 76-e. Specifically, pursuant to Domestic Relations Law § 75-a(4), a "'[c]hild custody proceeding means a proceeding' in which legal custody, physical custody, or visitation with respect to a child is an issue." These issues, however, are not the subject of a child support petition. See also Domestic Relations Law § 75-a(3).

Footnote 7: The respondent wanted the record to be clear that by expressly waiving her right to the hearing under Domestic Relations Law § 77-d, she was not waiving her right to establish before the Court in Illinois that service was improper under the laws of that jurisdiction.