■ MARY L. QUINN, Respondent, v EDWARD M. QUINN, Appellant.—Weiss, J. Appeals (1) from that part of a judgment of the Supreme Court (Bryant, J.), ordering, inter alia, that defendant pay maintenance to plaintiff, entered July 14, 1986 in Cortland County, upon a decision of the court, without a jury, and (2) from an order of the Family Court of Broome County (Esworthy, J.), entered June 5, 1987, which, inter alia, awarded custody of the parties' child to plaintiff.

The parties were married in June 1974 and their one child, Peter, was born on September 19, 1979. Marital discord precipitated a separation in April 1985. Defendant moved to

Pennsylvania while plaintiff and the child remained at the marital residence in the City of Cortland, Cortland County. In August 1985, defendant removed the child to Pennsylvania, without consent, following which virtually simultaneous custody proceedings were commenced in each State by the respective parties. On October 1, 1985, plaintiff successfully removed her son from Pennsylvania. In October 1985, Supreme Court awarded temporary custody of Peter to plaintiff, while restraining defendant from enforcing a similar order in his favor granted by a Pennsylvania court. Following a trial in June 1986, Supreme Court granted a divorce and equitable distribution. By consent, the issue of permanent custody was referred to the Broome County Family Court with plaintiff continuing temporary custody. Additionally, Supreme Court provided that defendant pay $150 per week for temporary maintenance and an equal amount for child support. At the conclusion of the custody hearing, Family Court awarded custody of Peter to plaintiff with liberal visitation rights extended to defendant. Family Court further directed that the parties terminate all proceedings in Pennsylvania and ordered the reduction of maintenance to $110 per week following defendant's loss of employment. Defendant has appealed from both the judgment of Supreme Court (except insofar as it dissolved the marriage) and the order of Family Court.

Initially, we observe that New York was the proper forum for resolution of the custody dispute under the Uniform Child Custody Jurisdiction Act (see, Domestic Relations Law art 5-A). Defendant maintains that New York was precluded from assuming jurisdiction since his custody complaint was pending in Pennsylvania at the commencement of the New York proceeding (see, Matter of Burch v Ahearn, 89 AD2d 742, 744, lv denied sub nom. Dwyer v Ahearn, 57 NY2d 609, 924, appeal dismissed 58 NY2d 654). While a viable question exists as to which proceeding predated the other, this dispute need not detain us for Domestic Relations Law § 75-a does not implement a "race to the courthouse" standard. This statutory deference provision presupposes the other State is "exercising jurisdiction substantially in conformity with this article" (Domestic Relations Law § 75-g [1]). Since the child had lived in New York continuously until he was removed by his father and taken to Pennsylvania in August 1985, and because there is substantial evidence as to all facets of the child's upbringing within this State, New York has clearly satisfied two jurisdictional predicates of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-d [1] [a] [ii]; [b]; see, Lansford

*v Lansford,* 96 AD2d 832, 834). Pennsylvania, on the other hand, is totally without a jurisdictional basis to render a custody determination *(see, Kilcullen v Bubanj,* 116 AD2d 470).  Consequently, Family Court properly entertained the custody issue (Domestic Relations Law § 75-g [1]; *see, Vanneck v Vanneck,* 49 NY2d 602; *Matter of Murray-Lee v Lewis,* 136 AD2d 517, 518; *Lansford v Lansford, supra).*

We further conclude that Family Court's custody determination has a sound and substantial basis in the record. The determinative issue here, of course, is the best interest of the child *(see, Friederwitzer v Friederwitzer,* 55 NY2d 89). In rendering its determination, Family Court simply observed that a joint custody arrangement was precluded by the acrimonious relationship between the parties. While the court did not otherwise describe the facts essential to its decision, our review of the record confirms that the award of custody to plaintiff suits Peter's best interest *(see, Guinan v Guinan,* 102 AD2d 963; *Matter of Payette v Payette,* 91 AD2d 733). The child has resided with his mother since birth, except during his short stay in Pennsylvania, enjoys a stable home environment and has done well in school. Stability is an important, albeit not determinative, factor *(see, Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946, 947; *Matter of Moon v Moon,* 120 AD2d 839). Defendant's allegations of plaintiff's neglect and her unfitness as a parent were simply premised on his own self-serving testimony. This is precisely the type of conflict in which we accord considerable deference to the trial court's determination *(see, Eschbach v Eschbach,* 56 NY2d 167, 173-174; *Matter of Venable v Venable,* 122 AD2d 374; *Matter of Van Dyck v Van Dyck,* 97 AD2d 909). Balancing all the circumstances, we find Family Court's award of custody to plaintiff well within its range of discretion.

Defendant further maintains that Family Court failed to state the factors relied on with respect to maintenance and child support as required by Domestic Relations Law § 236 (B) (6) (b) and (7) (b). The argument is misdirected. A review of Supreme Court's determination in the divorce action confirms that Supreme Court comprehensively reviewed these statutory factors in rendering maintenance and child support awards of $150 each "until the further order of this court or the Family Court". The issue before Family Court was essentially whether these awards should be modified due to defendant's recent loss of employment. In this context, Family Court was simply required to assess whether a substantial change in circumstances warranted a reduction in defendant's support

obligations (see, Domestic Relations Law § 236 [B] [9] [b]). Defendant's unforeseen loss of employment prior to the Family Court custody hearing provided ample basis for that court to direct a modification in the maintenance award from $150 to $110 per week. Notably, plaintiff, who was employed in a teaching position at this juncture, does not challenge the reduction. However, a similar reduction relative to child support was not warranted. In addressing an application to reduce child support, the principal focus is on the needs of the child (see, Matter of Brescia v Fitts, 56 NY2d 132; Matter of La Blanc v La Blanc, 96 AD2d 670). Given that no showing was made of any reduction in the child's needs, and defendant was collecting unemployment and was working on a temporary basis, Family Court properly left the award of child support intact.

Finally, defendant objects to the failure of both Supreme Court and Family Court to set a temporal limit to the maintenance award. In a matrimonial action, where appropriate, a court must consider "the amount *and duration of maintenance*" (Domestic Relations Law § 236 [B] [6] [a] [emphasis supplied]; see, Culnan v Culnan, 142 AD2d 805, 807). Here, Supreme Court did not fix any specific time period, but the award was rendered with the explicit understanding that review would be forthcoming once plaintiff secured full-time, gainful employment. At the time of Supreme Court's decision, plaintiff was 34 years old. She possessed a college degree in elementary education and, as Supreme Court astutely recognized, her earning potential could be enhanced by an opportunity to pursue a Master's degree (see, Domestic Relations Law § 236 [B] [6] [a] [3], [4]). Defendant, who has a Master's degree in business administration and is certified as a fellow in the Hospital Financial Management Association, was earning in excess of $50,000. Matters, however, had changed by the time of the hearing before Family Court in 1987. As indicated, defendant was temporarily unemployed, while plaintiff was employed as a preschool teacher in a day-care center. Plaintiff further indicated that she was contemplating her own babysitting business. Given these circumstances, we deem it appropriate to remit this matter to Supreme Court for a more specific determination as to the duration of maintenance.*

Judgment modified, on the law, without costs, by remitting

---

* We take note that inasmuch as the trial in this matrimonial action was held on June 26, 1986, the definitional change in the maintenance standard implemented by Laws of 1986 (ch 884, § 4) does not pertain. By virtue of this legislation, the prevailing "reasonable needs" standard has been replaced

the matter to the Supreme Court for reconsideration of the maintenance award in accord with this court's decision, and, as so modified, affirmed.

Order affirmed, without costs. Mahoney, P. J., Kane, Weiss, Mikoll and Harvey, JJ., concur.

with the directive that the courts focus on the parties' marital standard of living in setting both the amount and duration of maintenance *(see,* 3 Foster, Freed and Brandes, Law and the Family New York § 19:1, at 166-169 [2d ed, 1988 Cum Supp]; *see also,* 2 Foster, Freed and Brandes, Law and the Family New York §§ 2:21, 2:22, at 154-159 [2d ed]). This legislation was effectively designed to eliminate the harsh economic consequences experienced by homemaker spouses due to a stringent, but unfounded, judicial construction of the "reasonable needs" language (3 Foster, Freed and Brandes, Law and the Family New York § 19:1, at 166-169 [2d ed, 1988 Cum Supp]). The courts were further reminded that an award of permanent maintenance may be made where appropriate *(ibid.).* However, given the timing of the instant trial, the former "reasonable needs" standard continues to apply here *(see,* L 1986, ch 884, § 5).