Waldman v State of New York (2018 NY Slip Op 05000)





Waldman v State of New York


2018 NY Slip Op 05000


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

525607

[*1]PETER WALDMAN, Appellant,
v
STATE OF NEW YORK, Respondent.

Calendar Date: May 1, 2018

Before: Garry, P.J., McCarthy, Devine, Aarons and Pritzker, JJ.


Law Office of Henry Stanziale, Esq., Mineola (Thomas Stanziale of counsel), for appellant.
Barbara D. Underwood, Attorney General, Albany (Owen Demuth of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.
Appeal from an order of the Court of Claims (McCarthy, J.), entered February 2, 2017, which, among other things, granted defendant's motion for summary judgment dismissing the claim.
As set forth in our prior decision in this matter (140 AD3d 1448 [2016]), Luis Rodriguez is serving a lengthy prison sentence as the result of an armed robbery in which he victimized claimant and Marni Ludwig. In 2011, the Office of Victim Services (hereinafter OVS) notified claimant and Ludwig that the New York City Comptroller had agreed to pay Rodriguez certain sums of money as part of a litigation settlement (see Executive Law § 632-a [2] [c]). Claimant and Ludwig both advised OVS that they intended to sue Rodriguez to recover damages connected to the robbery, prompting OVS to commence a proceeding to prevent dissipation of the settlement funds (see Executive Law § 632-a [4]-[6]). The result was a preliminary injunction that barred the bulk of the settlement proceeds from being disbursed to Rodriguez so that they could "satisfy any judgments sought in lawsuits commenced by any crime victims."
Ludwig obtained a judgment against Rodriguez prior to claimant and presented it to OVS, which obtained an order lifting the preliminary injunction and directing the payment of the settlement proceeds to her. When claimant later obtained a judgment, he was advised by OVS [*2]that the settlement proceeds had already been released to Ludwig "based upon her priority as a judgment creditor" (see CPLR 5234 [c]).
Claimant responded by commencing this action, alleging that OVS was legally obliged by Executive Law § 632-a to "protect and secure" the settlement proceeds for all victims and that it was liable for failing to do so. Following joinder of issue, the parties each moved for summary judgment. The Court of Claims granted defendant's motion for summary judgment dismissing the claim and denied claimant's cross motion as moot. Claimant appeals, and we now affirm.
"Executive Law § 632—a sets forth a statutory scheme intended to improve the ability of crime victims to obtain full and just compensation from the person(s) convicted of the crime" (Matter of New York State Crime Victims Bd. v Harris, 68 AD3d 1269, 1271 [2009] [citations omitted]) by "allow[ing] crime victims or their representatives to sue the convicted criminals who harmed them when the criminals receive substantial sums of money from virtually any source" and protecting those funds while litigation is pending (Governor's Approval Mem, Bill Jacket, L 2001, ch 62, at 2-3; see Senate Mem, Bill Jacket, L 1992, ch 618, at 6). The statute does this by requiring entities with the funds of a convicted person to notify OVS (see Executive Law § 632-a [2]). OVS alerts crime victims to the existence of those funds and, if one or more victims intend to sue the convicted person, OVS is empowered to "avoid the wasting of" the funds by applying for provisional remedies that would ordinarily be unavailable to an individual suing for money damages (Executive Law § 632-a [5] [c]; see Executive Law § 632-a [3], [4], [6]; Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1271-1272).
There is no doubt that OVS complied with its express obligations under the statute. The problem is that the statute provides no guidance as to how OVS is to respond where, as here, multiple crime victims seek to recover and the preserved assets of a convicted person are inadequate [FN1]. OVS viewed its response to be governed by the general rule that, "[w]here two or more . . . orders affecting the same interest in personal property or debt are filed, the proceeds of the property or debt shall be applied in the order of filing," and acted to have the preserved assets released to satisfy the first judgment obtained by a victim (CPLR 5234 [c]). The interpretation of Executive Law § 632-a adopted by OVS is not entitled to deference since it involves a matter "of pure statutory reading and analysis," but our review leads us to agree with it (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see People v Francis, 30 NY3d 737, 746 [2018]).
The Legislature could have easily included language in Executive Law § 632-a that substituted a special rule of priority for the one set forth in CPLR 5234 (c), directed OVS to leave any provisional remedies in place until all victims had obtained judgments or created some mechanism for dividing the preserved assets between them. It did not do so, and "'[a] court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit'" (Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 62 [2013], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 74; see Pajak v Pajak, 56 NY2d 394, 397 [1982]).
The legislative history lends credence to the supposition that the omission was intentional. In an earlier version of Executive Law § 632-a, the subject assets of a convicted person were held in escrow for all victims, any victims who obtained civil judgments were granted priority to the assets over "[o]ther judgment creditors" and the victims were afforded a pro rata share of them (Executive Law former § 632-a [11], as added by L 1981, ch 445, § 3; see Barrett v Wojtowicz, 66 AD2d 604, 615 [1979]). The Legislature repealed that version of the statute when it was declared unconstitutional and replaced it with what became the current one (see L 1992, ch 618, § 10; see also Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd., 502 US 105 [1991]), and the omission of special rules regarding priority in the new statute points to their "repeal[] by necessary implication" (McKinney's Cons Laws of NY, Book 1, Statutes § 373). It does not appear that this omission was inadvertent, inasmuch as the Legislature addressed issues of judgment priority elsewhere within the same legislation (see L 1992, ch 618, § 8). The Legislature further failed to address the omission when it extensively amended Executive Law § 632-a in 2001 to, among other things, penalize certain entities that knowingly and willfully fail to give notice that they have the funds of, or are obliged to pay funds to, a convicted person and direct that the penalty be distributed among victims who obtain judgments against the convicted person (see Executive Law § 632-a [7], as added by L 2001, ch 62, § 1)[FN2]. The general rules of priority for civil judgments accordingly apply to judgments obtained by crime victims for purposes of Executive Law § 632-a. OVS acted in compliance with those rules and, thus, the Court of Claims properly granted defendant's motion for summary judgment dismissing the claim.
McCarthy, Aarons and Pritzker, JJ., concur.




Garry, P.J. (dissenting).


I respectfully dissent. The Office of Victim Services (hereinafter OVS) was solely aware and fully alone in its knowledge of the pertinent facts relative to the two claimants who were both actively pursuing settlement funds. OVS retained this information privately, wholly failing to make any disclosure that there were two victims, rather than only one, at any point to any other entity or individual. Most critically, OVS withheld this information from Supreme Court both upon the initial application to enjoin distribution of the funds and also upon the later application to release them [FN3]. As a result, there was no opportunity for judicial discretion, no [*3]weighing or balancing of equities, no opportunity for claimant's interests to be considered in any manner. I find clear error in this failure in light of the statutory directive that OVS must "act[] on behalf of . . . all victims" in providing crime victims with an opportunity to obtain compensation (Executive Law § 632-a [6] [emphasis added]).
This Court's "primary consideration" in interpreting a statute "is to discern and give effect to the Legislature's intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]; accord Matter of Level 3 Communications, LLC v Clinton County, 144 AD3d 115, 117 [2016], lv denied 29 NY3d 918 [2017]). In fulfilling this function, we look to the plain language of the statute. Particularly where, as here, there is no statutory provision that directly applies to the circumstances presented, we are further obligated to inquire into "the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010] [internal quotation marks and citation omitted]; accord Makinen v City of New York, 30 NY3d 81, 92 [2017, Garcia, J., dissenting]; see McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 124).
The Legislature's purpose in enacting Executive Law
§ 632-a was "to improve the ability of crime victims to obtain full and just compensation from the person(s) convicted of the crime" (Matter of New York State Crime Victims Bd. v Harris, 68 AD3d 1269, 1271 [2009]; see Ciafone v Kenyatta, 27 AD3d 143, 147 [2005]; Governor's Approval Mem, Bill Jacket, L 2001, ch 62). The current version of the statute was enacted with procedures that enlarged the sources of funds available to crime victims, provided extended limitations periods within which victims could seek compensation, and "ma[de] other meaningful amendments to ensure that victims of serious crimes have every reasonable opportunity to obtain financial compensation from the persons who committed crimes against them" (Governor's Approval Mem, Bill Jacket, L 2001, ch 62 at 3; see generally Executive Law former
§ 632-a; Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd., 502 US 105 (1991).
There is nothing within the statutory scheme of Executive Law § 632-a that reveals an intent to favor the earliest victim to obtain a judgment. As previously noted, the statute expressly obligates OVS to "act[] on behalf of the plaintiff and all other victims" when applying for provisional remedies to avoid the dissipation of a convicted person's assets (Executive Law § 632-a [6] [emphasis added]). OVS is further required to notify "all known crime victims" when it learns that qualifying assets exist, and is likewise required to provide notice of the existence of such assets to all known victims when it is notified that a victim intends to file suit or has done so (Executive Law § 632-a [2] [c] [emphasis added]; see Executive Law § 632-1 [5] [a]). The latter provision is entirely inconsistent with defendant's claim that the Legislature intended OVS to give priority to the first victim who obtains a judgment, even when it knows that other victims are also seeking relief. Further inconsistent with defendant's claim are provisions that seek to identify unknown victims by requiring OVS to publish notice of the existence of qualifying funds [*4]"at least once every six months for three years" after it learns that such funds exist (Executive Law § 632-a [5] [b]) and that give crime victims three years after the discovery of qualifying funds to file an action, regardless of the expiration of other statutes of limitations. The statute likewise reveals its purpose to protect the interests of multiple victims by providing that even after one victim has filed an action, other victims may also do so "within three years of the actual discovery of [qualifying] funds, or within three years of actual notice received from or notice published by [OVS] of such discovery, whichever is later" (Executive Law § 632-a [3]).
Nothing in the underlying statutory provisions is internally consistent with the "race to the courthouse" embraced by the majority, which appears "unseemly" in these circumstances (Matter of Francois v Dolan, 95 NY2d 33, 39 [2000]; see Quinn v Quinn, 145 AD2d 754, 755 [1988]). This scenario is readily distinguished from matters governed by CPLR 5234, in which multiple judgment creditors — whose information is fully available to all concerned in public records — proceed for relief. The information here was not available to the public (see Executive Law § 632-a [7] [b] [vi]; Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1271), and, despite the statute's clear directive to do so, OVS failed to take any reasonable steps of any nature to protect all victims' rights to be heard upon the claim.
It bears noting that there may be multiple scenarios where a court might reasonably determine that available funds should be released, in part or even in whole, to specific victims in specific circumstances, dependent upon the diverse potential factors involved. For this reason, in my view, the statute directs OVS to seek the assistance and discretion of a court in using provisional remedies to protect assets on behalf of victims, rather than prescribing specific procedures for the agency to follow in every potential situation. Here, however, no judicial weighing or balancing of the pertinent circumstances was allowed to occur. By failing to fully inform Supreme Court of the pertinent circumstances — even to merely advise the court of the existence of another victim who had duly and promptly provided notice that he was pursuing a claim against the funds — OVS introduced a fundamental flaw into the proceedings. Claimant was deprived of notice and left with no opportunity to be heard, to intervene in the injunction proceedings, or to advise the court of his pending claim. Claimant was indeed left wholly unaware that a race to the courthouse was underway. I cannot agree with interpreting a statute that was designed to aid "all victims" in such a manner.
Accordingly, I would reverse that part of the order that granted defendant's motion for summary judgment, and remit the matter to the Court of Claims for consideration of the merits of the claim and — as the actions of OVS were taken in direct contravention of its statutory mandate — the nature of the appropriate remedy.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1:It would be a far different case had OVS acted in a manner that released excess settlement proceeds to Rodriguez despite knowing that claimant was in the process of securing a judgment against him.

Footnote 2:To the extent that claimant attempts to invoke the provisions in Executive Law § 632-a (7), the New York City Comptroller notified OVS of the settlement as required and, as a result, "the circumstances . . . resulting in the instant action are not those to which Executive Law § 632-a (7) applies" (140 AD3d at 1450).

Footnote 3:Indeed, OVS implied that there was only one victim in its initial submission to Supreme Court, which identified only the other victim in the caption, described her repeatedly as "the crime victim" (emphasis added) in the body of the petition, and never mentioned or revealed the existence of a second victim in any manner. Thereafter, when OVS requested that the court set aside the injunction and release the funds, it did so solely on behalf of the other victim, never informing the court that claimant also had a statutory claim against the funds; at the time of this application, OVS was fully aware that claimant had also commenced an action.